BLUE SKY BAR, INC., ET AL. *v.* TOWN
OF STRATFORD ET AL.
(12837)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and F. FREEDMAN, Js.

Argued December 9, 1986—decision released March 31, 1987

*Lawrence J. Merly,* with whom was *Nicholas E. Wocl,*
for the appellants (plaintiffs).

*Carl E. Watt,* assistant town attorney, for the appellees (defendants).

ARTHUR H. HEALEY, J. This is an appeal from the Appellate Court's decision upholding the trial court's refusal to declare invalid and enjoin the enforcement of an ordinance enacted by the named defendant, the town of Stratford, which prohibits vending from any type of motor vehicle upon the streets or public property within the town limits.

The stipulated facts include the following: The named plaintiff, Blue Sky Bar, Inc. (Blue Sky Bar), is a Connecticut corporation engaged in the business of vending ice cream and related food products from specially designed mobile vending trucks. Its business is principally concentrated in southwestern Connecticut. Vending is conducted during a season which runs approximately from March 18 to October 18 of each year. Most of the sales take place in residential neighborhoods with the balance taking place at recreation areas, playgrounds and beaches. The ice cream and related products which the plaintiffs sell are purchased from suppliers in at least seven states.

In May, 1983, the plaintiffs, Michael A. McDougall and Brian Tomasko, drivers of Blue Sky Bar trucks, individually applied for and were issued permits by the defendant town of Stratford to vend ice cream from a mobile vehicle during the 1983 vending season. McDougall and Tomasko also obtained health permits to vend food in Stratford.

On May 23, 1983, the defendant town passed an ordinance, effective upon passage, which provides in relevant part: "It shall be unlawful for any person to vend or peddle upon the public streets, public property, and town property of the town of Stratford from any type

of motor vehicle any commodity whatsoever."[1] The stated purpose of the ordinance is to reflect the citizens' concerns regarding public safety. On May 25, 1983, the plaintiffs brought an action against the town and its chief of police seeking (1) a temporary and permanent injunction restraining the defendants from enforcing the ordinance, and (2) a declaratory judgment declaring the ordinance "illegal, void, unconstitutional and unenforceable."[2] On June 2, 1983, the trial court issued a temporary order restraining enforcement of the ordinance pending a full hearing on the merits. The case was heard on November 17, 1983, and, on December 15, 1983, the court rendered judgment for the defendants. The court held that the defendant town had statutory authority, pursuant to General Statutes § 7-148 (c) (7) (H) (iv), to enact the ordinance, that the ordinance was a reasonable exercise of the defendants' police power, and that the ordinance was constitutionally permissible.[3] The plaintiffs' request to make the temporary restraining order permanent was denied. On appeal, the Appellate Court agreed with the trial court and held accordingly. *Blue Sky Bar, Inc.* v. *Stratford,* 4 Conn. App. 261, 493 A.2d 908 (1985).

Upon the granting of their petition for certification, the plaintiffs have appealed to this court claiming that the Appellate Court erred in concluding that: (1) the defendant town had statutory authority to enact the

---

[1] In its entirety, the ordinance provides as follows: "It shall be unlawful for any person to vend or peddle upon the public streets, public property, and town property of the town of Stratford from any type of motor vehicle any commodity whatsoever.

"Any person who violates this article shall be fined not less than one hundred dollars ($100.00)."

[2] The plaintiffs also sought "[a]ny other relief, legal or equitable, that the court deems proper."

[3] Specifically, the court held that the ordinance did not violate the due process and equal protection clauses of the fourteenth amendment to the United States constitution nor did it violate the commerce clause of the United States constitution.

ordinance; (2) the ordinance is a reasonable exercise of police power; and (3) the ordinance is constitutionally permissible. The plaintiffs also claim that the Appellate Court erred in not reviewing the issue of whether General Statutes § 7-148 (c) (7) (H) (iv) unconstitutionally prohibits the operation of a legitimate business.[4] We disagree.

## I

We consider first the plaintiffs' claim that the defendants lacked statutory authority to prohibit vending from any type of motor vehicle. The plaintiffs and the defendants agree that the resolution of this issue necessarily hinges upon the relationship between General Statutes §§ 21-37[5] and 7-148 (c) (7) (H) (iv).[6] Section 21-37, which was enacted in 1909, provides in part that "[a]ny town

---

[4] The record indicates that this claim was made for the first time on appeal in the Appellate Court. The Appellate Court, after concluding that the plaintiffs had not presented any exceptional circumstances which would justify departure from the rule that claims not distinctly raised at trial cannot be raised for the first time on appeal, refused to address the merits of the plaintiffs' claim. *Blue Sky Bar, Inc.* v. *Stratford,* 4 Conn. App. 261, 263 n.2, 493 A.2d 908 (1985). We agree with this conclusion of the Appellate Court and, therefore, will not address this claim, except to the extent that it may be implicated in our discussion of the other issues.

[5] General Statutes (Rev. to 1983) § 21-37 provides: "TOWN ORDINANCES. Any town may make reasonable ordinances with reference to the vending or hawking upon its public streets of any goods, wares or other merchandise at public or private sale or auction, or to the vending or peddling of such articles from house to house within its limits, including the imposition of a fee, not exceeding two hundred fifty dollars a year, applicable with respect to any person engaged in such vending, hawking or peddling, for the privilege of so vending, hawking or peddling such merchandise. This section shall not apply to sales by farmers and gardeners of the produce of their farms and gardens, or to the sale, distribution and delivery of milk, teas, coffees, spices, groceries, meats and bakery goods, to sales on approval, to conditional sales of merchandise, or to the taking of orders for merchandise for future delivery when full payment is not required at the time of solicitation."

[6] General Statutes § 7-148 (c) (7) (H) (iv) provides: "(c) Powers. Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the constitution and general stat-

may make reasonable ordinances with reference to the vending or hawking upon its public streets of any goods, wares or other merchandise at public or private sale or auction, or to the vending or peddling of such articles from house to house within its limits . . . . " Section 7-148 (c) (7) (H) (iv), which is part of the Home Rule Act and was adopted in 1982, states that any municipality has the power to "[p]rohibit, restrain, license and regulate the business of peddlers, auctioneers and junk dealers in a manner not inconsistent with the general statutes."

The plaintiffs maintain that the ordinance is invalid because it is inconsistent with § 21-37, which permits only the enactment of "reasonable ordinances" with reference to vending, rather than the "prohibition" of vending. The plaintiffs acknowledge that § 7-148 (c) (7) (H) (iv) uses the term "prohibit" but point out that that section also states that a municipality must enact ordinances "in a manner not inconsistent with the general statutes." This provision, they argue, must be read in conjunction with § 21-37. They maintain that "obviously, the legislature intended § 7-148 (c) (7) (H) (iv) to be limited by § 21-37." The plaintiffs also claim that § 7-148 (c) (7) (H) (iv), when read together with § 21-37, only permits a municipality "to prohibit a legitimate business if that business does not follow the licensure requirements or reasonable regulations imposed upon it." The defendants, on the other hand, argue that the two statutes are not inconsistent; that is, § 7-148 (c) (7) (H) (iv) merely "elaborates" on the type of action a municipality may choose when enacting a "reasonable ordinance."

utes . . . (7) Regulatory and police powers . . . (H) Health and Safety . . . (iv) Prohibit, restrain, license and regulate the business of peddlers, auctioneers and junk dealers in a manner not inconsistent with the general statutes."

The Appellate Court agreed with the defendants' argument and viewed "§ 7-148 (c) (7) (H) (iv) as an elaboration of the types of action a municipality may choose when enacting a reasonable ordinance in the exercise of its police powers under § 21-37." *Blue Sky Bar, Inc.* v. *Stratford,* supra, 264. This construction, the Appellate Court determined, "[gave] both statutes efficacy." Id. The court concluded, therefore, that the defendants possessed the statutory authority to prohibit vending from motor vehicles. While we agree with the conclusion reached by the Appellate Court that the defendant town had statutory authority to enact the ordinance, we do so for different reasons. We need not decide the issue of whether § 7-148 (c) (7) (H) (iv) authorizes a municipality to prohibit outright any and all vending on public streets and property because the ordinance at issue in this case is not a prohibition of vending, but is simply a permissible regulation of the method by which commodities may be merchandised.

It is well settled law that as a creation of the state, a municipality has no inherent powers of its own; *New Haven Commission on Equal Opportunities* v. *Yale University,* 183 Conn. 495, 499, 439 A.2d 404 (1981); and that a municipality possesses only such rights and powers that have been granted expressly to it by the state or that are necessary to discharge its duties and to carry out its objectives and purposes. Id., citing *City Council* v. *Hall,* 180 Conn. 243, 248, 429 A.2d 481 (1980); see also *Simmons* v. *Canty,* 195 Conn. 524, 529, 488 A.2d 1267 (1985); *Buonocore* v. *Branford,* 192 Conn. 399, 401–402, 471 A.2d 961 (1984).[7] Under both

---

[7] An ordinance is a legislative enactment of a municipality. 2 J. Sutherland, Statutory Construction (4th Ed. Sands) § 30.01. " 'It designates a local law of a municipal corporation, duly enacted by the proper authorities, prescribing general, uniform, and permanent rules of conduct relating to the corporate affairs of the municipality. 5 McQuillin, Municipal Corporations (3d Ed.) § 15.01.' *Morris* v. *Newington,* 36 Conn. Sup. 74, 80, 411 A.2d 939 (1979) [aff'd, 180 Conn. 89, 428 A.2d 342 (1980)]." *Blue*

§§ 21-37 and 7-148 (c) (7) (H) (iv), the state has granted to municipalities the power to *regulate* vending on public streets and public property. The issue then is whether the ordinance enacted by the defendant town is a regulation or a prohibition of vending because if the ordinance acts to regulate rather than prohibit outright, we need not discuss the issue addressed by the Appellate Court concerning the relationship between §§ 21-37 and 7-148 (c) (7) (H) (iv).

The word "regulate" has been defined as " 'to prescribe the rule by which commerce is to be governed.' " *United States* v. *Darby,* 312 U.S. 100, 113, 61 S. Ct. 451, 85 L. Ed. 609 (1941). "The power to regulate, however, entails a certain degree of prohibition. 2 McQuillin, Municipal Corporations (3d Ed.) § 10.26. The word 'regulate' implies, when used in legislation, the bringing under the control of constituted authorities the subject to be regulated. Webster, New International Dictionary (2d Ed.). It infers limitations." *Hartland* v. *Jensen's, Inc.,* 146 Conn. 697, 702, 155 A.2d 754 (1959); see *Greenwich* v. *Connecticut Transportation Authority,* 166 Conn. 337, 342, 348 A.2d 596 (1974). We have recognized that it "requires no citation of authority to say that regulation may in many instances result in prohibition. The question is whether the result is reached in a reasonable manner and is necessary for the public welfare." *Shorehaven Golf Club, Inc.* v. *Water Resources Commission,* 146 Conn. 619, 625, 153 A.2d 444 (1959). It is fair to say that the power to regulate, however, does not necessarily imply the power to prohibit absolutely any business or trade, as the very essence of regulation, which infers limitations, is the continued existence of that which is regulated. Prohibition of an

*Sky Bar, Inc.* v. *Stratford,* 4 Conn. App. 261, 265, 439 A.2d 908 (1985). An ordinance is subject to the same canons of construction as are applied to state statutes. *Aaron* v. *Conservation Commission,* 183 Conn. 532, 537, 441 A.2d 30 (1981); 2 J. Sutherland, supra, § 30.06.

incident to or particular method of carrying on a business is not prohibition, but rather it is merely "regulation." *Steffey* v. *Casper,* 357 P.2d 456, 461 (Wyo. 1960); see also *Breard* v. *Alexandria,* 341 U.S. 622, 631, 71 S. Ct. 920, 95 L. Ed. 1233, reh. denied, 342 U.S. 843, 72 S. Ct. 71, 96 L. Ed. 637 (1950) ("[a]ll regulatory legislation is [in a sense] prohibitory"); *Fenton Gravel Co.* v. *Fenton,* 371 Mich. 358, 361–62, 123 N.W.2d 763 (1963) (ordinance which prohibited large vehicles from using certain streets but established other routes through village at a greater distance from the plaintiffs' business constituted a "regulation" and was not objectionable as a "prohibition").

We conclude that the ordinance at issue in this case is regulatory. The ordinance merely proscribes vending from motor vehicles; it does not preclude all vending. The plaintiffs, therefore, are not absolutely forbidden from vending their products; rather, the effect of the ordinance is to regulate the method by which the plaintiffs may vend their products. While it is true that this ordinance limits the plaintiffs in the manner of merchandising their products, there is nothing in the ordinance that forbids the plaintiffs from selling their products via bicycle, pushcart or other nonmotor vehicle. Cf. *Delight Wholesale Co.* v. *Overland Park,* 203 Kan. 99, 453 P.2d 82 (1969). There is no question that both §§ 21-37 and 7-148 (c) (7) (H) (iv) permit *regulation* of "vending or hawking on public streets." The Appellate Court, therefore, was correct in its conclusion that the defendant town had statutory authority to enact the ordinance.

II

We next address the plaintiffs' claim that the Appellate Court erred in concluding that the ordinance was a reasonable exercise of police power. The plaintiffs argue that the ordinance is unreasonable and thus

invalid because it does not rationally relate to the defendants' alleged purpose for the ordinance. The plaintiffs contend that the defendants could have realized their desired objectives in a less burdensome manner and point out that the record is "wholly devoid of any real and substantial purpose or need for enacting the ordinance." The defendants argue that the ordinance is a reasonable exercise of police power, has a legitimate purpose, and is rationally related to both the safety of the children of Stratford and its free flow of traffic.

The challenged ordinance is an exercise of the police power conferred upon the town by statute. There is no doubt that the town has a right to regulate a business, pursuant to its police power, in the interest of protecting the public safety or the welfare of its inhabitants. *Caldor's, Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304, 317, 417 A.2d 343 (1979); *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles*, 167 Conn. 304, 307, 355 A.2d 247 (1974); see also General Statutes § 7-148 (c) (7) (H). Any such regulation, however, must be reasonably calculated to achieve that purpose; it must have a rational relationship to its objective. *Caldor's, Inc.* v. *Bedding Barn, Inc.*, supra; see also *Helbig* v. *Zoning Commission*, 185 Conn. 294, 304, 440 A.2d 940 (1981); *State* v. *Gordon*, 143 Conn. 698, 703, 125 A.2d 477 (1956). "The State may regulate any business or the use of any property in the interest of the public welfare or the public convenience, provided it is done reasonably. *Connecticut Light & Power Co.* v. *Southbury*, 95 Conn. 242, 111 Atl. 363 [1920]." *State* v. *Bassett*, 100 Conn. 430, 432, 123 A. 842 (1924). "The limit of the exercise of the police power is necessarily flexible, because it has to be considered in the light of the times and the prevailing conditions. *State* v. *Hillman*, 110 Conn. 92, 105, 147 A. 294 [1929]." *State* v. *Gordon*, supra. "Whether the times and conditions

require legislative regulation, as well as the degree of that regulation, is exclusively a matter for the judgment of the legislative body . . . . Courts can interfere only in those extreme cases where the action taken is unreasonable, discriminatory or arbitrary. *Carroll* v. *Schwartz,* 127 Conn. 126, 130, 14 A.2d 754 [1940]; *State* v. *Miller,* 126 Conn. 373, 377, 12 A.2d 192 [1940]." *State* v. *Gordon,* supra; see also *Connecticut Theatrical Corporation* v. *New Britain,* 147 Conn. 546, 553, 163 A.2d 548 (1960). "Every intendment is to be made in favor of the validity of [an] ordinance and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt." *Connecticut Theatrical Corporation* v. *New Britain,* supra; *Aaron* v. *Conservation Commission,* 183 Conn. 532, 537, 441 A.2d 30 (1981); *Riley* v. *Board of Police Commissioners,* 147 Conn. 113, 117, 157 A.2d 590 (1960). "[T]he court presumes validity and sustains the legislation unless it clearly violates constitutional principles. . . . If there is a reasonable ground for upholding it, courts assume that the legislative body intended to place it upon that ground and was not motivated by some improper purpose. . . . This is especially true where the apparent intent of the enactment is to serve some phase of the public welfare."[8] *State* v. *Gordon,* supra.

The sale of articles of merchandise on streets and other public places is a business which concerns many

[8] " 'Where municipal authorities act in accordance with formal requirements, courts will interfere only "where fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power, or violation of law, enter into or characterize . . . [the action taken]." *Whitney* v. *New Haven,* 58 Conn. 450, 457, 20 A. 666 [1890]; *LaTorre* v. *Hartford,* 167 Conn. 1, 9, 355 A.2d 101 [1974]; 13 McQuillin, Municipal Corporations (3d Ed.) §§ 37.03, 37.26.' *Pizzuto* v. *Newington,* 174 Conn. 282, 286, 386 A.2d 238 (1978)." *Blue Sky Bar, Inc.* v. *Stratford,* 4 Conn. App. 261, 265, 493 A.2d 908 (1985); see *Northeast Electronics Corporation* v. *Royal Associates,* 184 Conn. 589, 592, 440 A.2d 239 (1981).

people in differing ways. Legislation regulating it, which has a reasonable relation to public health, safety and welfare and is not arbitrary or discriminatory, has been sustained by other courts. See, e.g., *New Orleans* v. *Dukes,* 427 U.S. 297, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976); *Good Humor, Inc.* v. *Mundelein,* 33 Ill. 2d 252, 211 N.E.2d 269 (1965); see generally annot., 14 A.L.R.3d 896, Peddling in Streets. In this case, the parties stipulated that the ordinance was enacted out of concern for public safety. The record reveals that this concern focused upon both the safety of children and the free flow of traffic. *Blue Sky Bar, Inc.* v. *Stratford,* supra, 266.

"Whether conditions require the degree of regulation imposed by an ordinance is a matter for the judgment of the legislative body of the municipality." Id., 265, citing *Connecticut Theatrical Corporation* v. *New Britain,* supra. Given the fact that courts indulge every legal presumption and reasonable inference of fact in favor of the validity of police power legislation, the existence of facts justifying the enactment are presumed. 6 E. McQuillin, supra, § 24.31. "This strong presumption of legislative validity is overcome only when it plainly appears that the terms of the legislation are not reasonable or that they are not rationally adapted to the promotion of public health, safety, convenience, or welfare. *Young* v. *West Hartford,* 111 Conn. 27, 31–32, 149 A. 205 (1930)." *Blue Sky Bar, Inc.* v. *Stratford,* supra, 266. The party challenging the enactment bears the burden of overcoming this presumption.

The defendants were certainly entitled to conclude that this ordinance would have the effect of promoting, at least in part, their concern for public safety in the town of Stratford. For example, in *Neal* v. *Shiels, Inc.,* 166 Conn. 3, 13, 347 A.2d 102 (1974), this court recognized the danger to the safety of children created by vending ice cream on public streets. In *Neal,* we

stated that it is common knowledge that "[w]hen a street vendor deliberately uses a public street or an area close to or adjacent to a public street to sell his wares for profit, and by his bell, gong, chimes or other method of attraction, consciously and intentionally invites potential customers, many of whom are children, to the zone of danger from traffic, it is *foreseeable* that children would cross the street and be in streets in the area where he is doing business and where there is potential danger . . . [especially] in view of their often singleminded interest in his wares and their accompanying disregard for traffic." (Emphasis added.) Id. Other courts have recognized the impact that peddlers and itinerant vendors may have on traffic. See, e.g., *Piane* v. *Conway,* 118 N.H. 883, 395 A.2d 517 (1978). It is clear, therefore, that the ordinance is directed toward and reasonably calculated to impact the legitimate goal of protecting the safety of the citizens of the town of Stratford. We cannot say that this ordinance was not rationally adapted to that purpose.

In reaching this conclusion, we recognize that the parties have stipulated that during the 1983 vending season, no accidents resulting in personal injuries involving Blue Sky Bar trucks had occurred within the town of Stratford. This alone, however, is not enough to satisfy the plaintiffs' heavy burden in challenging the rationality of the ordinance. The plaintiffs have failed to present any evidence to the trial court to rebut the presumed rationality of the defendants' legitimate ongoing concern for public safety. *Franklin Furniture Co.* v. *Bridgeport,* 142 Conn. 510, 514, 115 A.2d 435 (1955).

### III

We next address the plaintiffs' claim that the Appellate Court erred in concluding that the Stratford ordinance did not violate the due process and equal protection clauses of the United States constitution.

In support of this claim, the plaintiffs argue that the ordinance infringes upon their fundamental right to engage in a lawful business and impermissibly discriminates not only between those who vend from motor vehicles and those who vend from fixed locations, but also between those who vend from motor vehicles and those who do so from bicycles, pushcarts or non-motor vehicles.

"In the case of economic regulation, the test to determine constitutionality is well established in our cases. The equal protection and the due process provisions of both constitutions have the same meaning and the same limitations. *Miller* v. *Heffernan,* [173 Conn. 506, 516–17, 378 A.2d 572 (1977)]; *Horton* v. *Meskill,* 172 Conn. 615, 639, 376 A.2d 359 (1977); *Kellems* v. *Brown,* 163 Conn. 478, 485, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1972); *Katz* v. *Brandon,* 156 Conn. 521, 537, 245 A.2d 579 (1968); *People* v. *Santiago,* 51 App. Div. 2d 1, 10, 379 N.Y.S.2d 843 (1975)." *Caldor's, Inc.* v. *Bedding Barn, Inc.,* supra, 314; see also 2 R. Rotunda, J. Nowak & J. Young, Constitutional Law: Substance and Procedure § 15.4, pp. 51–52. "Under any and all of these provisions, an act regulating economic activity must bear a reasonable relationship to a proper legislative purpose in a manner that is neither arbitrary nor discriminatory. *Carroll* v. *Schwartz,* 127 Conn. 126, 130, 14 A.2d 754 (1940). 'The court's function . . . is to decide whether the purpose of the legislation is a legitimate one and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way. If an enactment meets this test, it satisfies the constitutional requirements of due process and equal protection.' *Pierce* v. *Albanese,* 144 Conn. 241, 249, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957). The constitutional issue is whether legislative classifications or discriminations bear 'a rational

relationship to a legitimate state end and [are] based on reasons related to the pursuit of that goal.' *Gentile* v. *Altermatt,* 169 Conn. 267, 295, 363 A.2d 1, appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976)." *Caldor's, Inc.* v. *Bedding Barn, Inc.,* supra, 314–15. "[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines . . . in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *New Orleans* v. *Dukes,* supra, 303–304.

We disagree with the plaintiffs' argument that the ordinance impermissibly infringes upon their right to engage in a lawful business.[9] Putting aside the argu-

---

[9] The plaintiffs characterize this claim as a deprivation of their "fundamental right" to engage in a lawful business. While we agree with the plaintiffs' contention that whenever an ordinance infringes on a fundamental right, it must be justified by a compelling government interest, we disagree with the plaintiffs' characterization of their rights as "fundamental." In *Meyer* v. *Nebraska,* 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923), the United States Supreme Court indicated that the due process clause of the fourteenth amendment "denotes not merely freedom from bodily restraint but also the right of the individual . . . to engage in any of the common occupations of life . . . ." *Meyer,* we note, stated: "The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect." Id., 399–400. This view accords with *Lawton* v. *Steele,* 152 U.S. 133, 137, 14 S. Ct. 499, 38 L. Ed. 385 (1894), where the United States Supreme Court stated: "The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations." See *State* v. *McCleary,* 65 N.C. App. 174, 180–81, 308 S.E.2d 883 (1983). Thus, "[a] state law will not be permitted to deny a person the right to pursue his occupation . . . unless it is rationally related to the achievement of a legitimate state interest. *Kelley* v. *Johnson,* 425 U.S. 238, 247, 96 S. Ct. 1440, 47 L. Ed. 2d 708 (1976); *Weber* v. *Aetna Casualty & Surety Co.,* 406 U.S. 164, 172–73, 92 S. Ct. 1400, 31 L. Ed. 2d 768 (1972)." *Margaret S.* v. *Treen,* 597 F. Sup. 636, 674 (E.D. La. 1984), aff'd, 794 F.2d

ment that it is the sale of ice cream, and not the method by which it is done, that is the plaintiffs' business, it is clear that "even a legitimate occupation may be restricted or prohibited in the public interest." *Breard* v. *Alexandria,* supra, 632–33, citing *New State Ice Co.* v. *Liebmann,* 285 U.S. 262, 280, 303, 52 S. Ct. 371, 76 L. Ed. 747 (1932) (Brandeis, J., dissenting). We have already concluded in part II of this opinion that the purpose of the ordinance is valid and that the means the defendants chose to accomplish that purpose are reasonable. In addition, we note that "where the legislative judgment is drawn in question, [the inquiry] must be restricted to the issue [of] whether *any* state of fact either known or which could *reasonably be assumed,* affords support for [the legislation]." (Emphasis added.) *United States* v. *Carolene Products Co.,* 304 U.S. 144, 154, 58 S. Ct. 778, 82 L. Ed. 1234 (1938); see *Williamson* v. *Lee Optical,* 348 U.S. 483, 490, 75 S. Ct. 461, 99 L. Ed. 563, reh. denied, 349 U.S. 925, 75 S. Ct. 657, 99 L. Ed. 1256 (1955). The ordinance clearly meets the requirements of the due process clause.

Under the relaxed constitutional standard of review applied to economic regulation, we also conclude that the challenged classification is rationally related to the purpose of the ordinance. See *New Orleans* v. *Dukes,* supra. Although a " 'legislative act . . . may not establish classes that have no reasonable relation to any permissible, public purpose . . . [it] does not . . . prevent the legislature from dealing differently with different classes of people. It means only that classifi-

---

994 (5th Cir. 1986). The Michigan Court of Appeals has, in this context, appropriately observed: "The right or privilege of engaging in business is an important aspect of liberty, but it is not a fundamental right. *Griswold* v. *Connecticut,* 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965); *Ferguson* v. *Skrupa,* 372 U.S. 726, 83 S. Ct. 1028, 10 L. Ed. 2d 93 (1963)." *Stockler* v. *Treasury Department,* 75 Mich. App. 640, 646, 255 N.W.2d 718 (1977), appeal dismissed, 435 U.S. 963, 98 S. Ct. 1598, 56 L. Ed. 2d 54 (1978).

cations must be based on natural and substantial differences, germane to the subject and purpose of the legislation, between those within the class included and those whom it leaves untouched.' *Tough* v. *Ives,* 162 Conn. 274, 292–93, 294 A.2d 67 (1972); *New Orleans* v. *Dukes,* [supra, 303]." *Caldor's, Inc.* v. *Bedding Barn, Inc.,* supra, 315. The ordinance distinguishes vendors who merchandise their wares by means of motor vehicles from vendors who merchandise by means of nonmotor vehicles. We cannot say that the plaintiffs have established that this classification is irrational in relation to its stated purpose. The Stratford town council could reasonably have concluded that vending from nonmotor vehicles has less of an impact on the free flow of traffic and presents less of an overall safety hazard to children than vending from motor vehicles. These judgments are not so lacking in rationality that they result in a constitutionally impermissible denial of equal protection. See *New Orleans* v. *Dukes,* supra.[10]

## IV

We next address the plaintiffs' final claim that the Appellate Court erred in concluding that the ordinance does not impermissibly interfere with interstate commerce. The plaintiffs argue that the prohibition on sales

---

[10] The plaintiff also claims that a less intrusive means of regulating motorized vendors could have been employed which could have made motorized vending safer than other forms of street vending. In exercising its police power, a local legislative body has broad discretion, both in determining what the public welfare requires and in fashioning legislation to meet that need. *Mott's Super Markets, Inc.* v. *Frassinelli,* 148 Conn. 481, 487, 172 A.2d 381 (1961). In the economic sphere, the test is whether it is conceivable that the legislation bears a rational relationship to a legitimate government objective; there is no requirement that the legislature enact the least intrusive means of accomplishing a desired goal. See *New Orleans* v. *Dukes,* 427 U.S. 297, 303–304, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976), citing *Katzenbach* v. *Morgan,* 384 U.S. 641, 657, 86 S. Ct. 1731, 16 L. Ed. 2d 828 (1966); *Williamson* v. *Lee Optical,* 348 U.S. 483, 489, 75 S. Ct. 461, 99 L. Ed. 562 (1954), reh. denied, 349 U.S. 925, 75 S. Ct. 657, 99 L. Ed. 1256 (1955).

from motor vehicles constitutes an impermissible burden on interstate commerce. Specifically, the plaintiffs argue that the "mere incantation of a purpose to promote public health or safety does not insulate [an ordinance] from a Commerce Clause attack" and that an "illusory safety justification" should not be found to be a reasonable basis for enacting an ordinance which interferes with interstate commerce.[11]

"Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Huron Portland Cement Co.* v. *Detroit*, 362 U.S. 440, 443 [80 S. Ct. 813, 4 L. Ed. 2d 852 (1960)]." *Pike* v. *Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970); see also *Edgar* v. *Mite Corporation*, 457 U.S. 624, 102 S. Ct. 2629, 73 L. Ed. 2d 269 (1982); 1 R. Rotunda, J. Nowak & J. Young, supra, § 11.9, pp. 618–19.[12] "If a legitimate local purpose is found, then the question becomes one of degree." *Pike* v. *Bruce Church, Inc.*, supra.

We note that in this case, we are dealing with " 'legislation in the field of safety where the propriety of local regulation has long been recognized.' " *Pike* v. *Bruce Church, Inc.*, supra, 143, quoting *Southern Pacific Co.*

---

[11] In support of this contention, the plaintiffs allege that certain products purchased and sold by their company are part of the stream of interstate commerce.

[12] "A challenged law need not be a state statute to violate the commerce clause; a local ordinance can also create an unlawful infringement on interstate commerce." *Service Machine & Shipbuilding Corporation* v. *Edwards*, 617 F.2d 70, 73 (5th Cir.), aff'd, 449 U.S. 913, 101 S. Ct. 310, 66 L. Ed. 2d 142 (1980).

v. *Arizona,* 325 U.S. 761, 796, 65 S. Ct. 1515, 89 L. Ed. 1915 (1945) (Douglas, J., dissenting); see also *Kassel* v. *Consolidated Freightways Corporation,* 450 U.S. 662, 670, 101 S. Ct. 1309, 67 L. Ed. 2d 580 (1981) ("a State's power to regulate commerce is never greater than in matters traditionally of local concern"). There is a strong presumption of validity that surrounds safety regulations and the burden of overcoming that strong presumption rests on the party challenging the regulation on commerce clause grounds. *Specialized Carriers & Rigging Assn.* v. *Virginia,* 795 F.2d 1152, 1159 (4th Cir. 1986).

As we have already discussed, the ordinance was enacted to effectuate a legitimate local public interest. We note also that the ordinance operates evenhandedly to effectuate this interest. Because of the ordinance, no person may "vend or peddle . . . from any type of motor vehicle any commodity whatsoever." By virtue of its general application, this ordinance cannot be criticized as an attempt by the defendants to protect the economic interests of local vendors at the expense of nonlocal vendors. This case is distinguishable, therefore, from those cases in which courts have struck down challenged legislation which had been enacted in order to protect local interests from out-of-state competition. Cf. *Dean Milk Co.* v. *Madison,* 340 U.S. 349, 71 S. Ct. 295, 95 L. Ed. 329 (1951); *Hood & Sons, Inc.* v. *DuMond,* 336 U.S. 525, 69 S. Ct. 657, 93 L. Ed. 865 (1949). "[R]egulation that leaves out-of-state sellers on the same basis as local sellers [is not] invalid. . . ." *Breard* v. *Alexandria,* supra, 638.

We do not agree with the plaintiffs' conclusory statement that the probable impact of the ordinance is to create an "enormous burden on interstate commerce." Any impact on interstate commerce which may result from this ordinance, insofar as is apparent from the record before us, is certainly incidental. The plaintiffs

have come forth with no showing that " 'the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.' " *Pharmaceutical Manufacturers Assn.* v. *Whalen,* 54 N.Y.2d 486, 496, 430 N.E.2d 1270, 446 N.Y.S.2d 217 (1981). We cannot conclude, therefore, that the plaintiffs have established that the Stratford ordinance violates the commerce clause. *Pike* v. *Bruce Church, Inc.,* supra; see also *Minnesota* v. *Clover Leaf Creamery Co.,* 449 U.S. 456, 472–73, 101 S. Ct. 715, 66 L. Ed. 2d 659, reh. denied, 450 U.S. 1027, 101 S. Ct. 1735, 68 L. Ed. 2d 222 (1981). The United States Supreme Court has "stressed that the Commerce Clause 'protects the interstate market, not particular interstate firms, from prohibitive or burdensome regulations.' . . . A nondiscriminatory regulation serving substantial [local] purposes is not invalid simply because [the burden falls more heavily on a particular business]. Only if the burden on interstate commerce clearly outweighs the . . . legitimate [local] purposes does such a regulation violate the Commerce Clause." *Minnesota* v. *Clover Leaf Creamery Co.,* supra, 474. The trial court and the Appellate Court were fully justified in concluding that the ordinance is rationally related to the health and safety of the community, that it does not discriminate against interstate commerce or disrupt its required uniformity and, therefore, does not violate the commerce clause.

We affirm the decision of the Appellate Court.

In this opinion the other justices concurred.