[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM ON PLAINTIFF'S APPLICATION FOR A TEMPORARY INJUNCTION
This action was returnable on April 10, 1990. The complaint as amended on October 15, 1991, consisted of nine counts, and sought by way of relief:
(1) A declaratory Judgment that the action of The Meriden City Council an November 23, 1989 be null and void as being an illegal and gross abuse of power.
(2) A declaratory Judgment that the action of the Meriden City Council on February 5, 1990 is null and void as being an illegal and gross abuse of power.
(3) A declaratory Judgment that the action of the Meriden City Council on February 5, 1990 was a discontinuance or abandonment of a portion of Cedarwood Drive and that under Connecticut General Statute Section 13a-55 as amended the plaintiffs continue to have a right of access to the remainder of Cedarwood Drive.
(4) A declaratory Judgment that the action of the Meriden City Council on November 8, 1989 was a discontinuance or abandonment of portions of Old Stagecoach Road, Scanlon Court, Rose Circle and that the plaintiffs under Connecticut General Statutes 13a-55 as amended have a right of access over the discontinued or abandoned portions to the remainder of Old Stagecoach Road, Scanlon Court and Rose Circle.
(5) A declaratory Judgment that the Road Opening Permit issued to the plaintiffs on January 3, 1989 is still valid, and is binding upon the City of Meriden.
(6) A declaratory Judgment that the actions of the Meriden City Council of both November 8, 1989 and February 5, 1990 are a taking without just compensation and a deprivation of a property right, both in violation of the Fifth Amendment to the Constitution of the United States.
(7) The appointment of three disinterested persons as provided by Connecticut General Statute Section 13a-49 and Section 13a-612 to determine the validity of the discontinuance.
(8) A temporary restraining order enjoining the defendants, their agents, servants and employees from blocking access to and from the plaintiffs' properties to and from Old CT Page 4092 Stagecoach Road, Scanlon Court, Rose Circle and Cedarwood Drive, all of which are public streets within the City of Meriden.
(9) A permanent injunction enjoining a temporary restraining order [sic] the defendants from blocking access to and from the plaintiffs' properties to and from Old Stagecoach Road, Scanlon Court. Rose Circle and Cedarwood Drive, all of which are public streets within the City of Meriden.
(10) Monetary Damages within the jurisdiction of the Superior Court against the municipal defendants.
(11) Monetary Damages within the jurisdiction of the Superior Court against the individual defendants.
(12) Attorney fees.
(13) Punitive damages.
The defendant filed an answer and special defense. The answer denied the essential allegations of the complaint. The special defense stated that the City of Meriden at the time and place as alleged in the plaintiffs' amended complaint was engaged in an essential governmental duty and function imposed upon it by law for the benefit and welfare of the community as a whole and not for profit and hence it is without liability for matters or things alleged in the plaintiffs' amended complaint.
The defendant replied to this special defense by denying it.
On December 31, 1992, the plaintiff filed an application for a temporary injunction asking that the defendants be ordered to appear at an early date to show cause why an injunction should not issue restraining said defendants from blocking or otherwise denying the plaintiffs access to their property located in Wallingford, Connecticut, which property abuts the Wallingford-Meriden town line from the Meriden public highway known as Cedarwood Drive, which public highway abuts the plaintiffs' property.
The claim for relief contained in the complaint had asked for a temporary restraining order enjoining the defendants, their agents, servants and employee, from blocking access to and from the plaintiffs' properties to and from Old Stagecoach Road, CT Page 4093 Scanlon Court, Rose Circle, as well as Cedarwood Drive, all of which are public streets within the City of Meriden.
In response to the court's order to show cause, the parties appeared and were heard on January 27, 1993 and March 11, 1993. Both parties filed pretrial briefs.
The principal argument of the plaintiff is that as an abutting property owner the plaintiff, have a right of way over Cedarwood Drive; pursuant to C.G.S. 13a-55, that the defendant City of Meriden has declared Cedarwood Drive a dead end street in an effort to deny plaintiffs access to the premises.
 Section 13a55 of the Connecticut General Statutes states: Property owners bounding a discontinued or abandoned highway, or a highway any portion of which has been discontinued or abandoned, shall have a right-of-way over such discontinued or abandoned highway to the nearest or most accessible highway.
The plaintiffs claim that the action of the defendant City of Meriden in designating Cedarwood Drive as a dead end street constituted a discontinuance of a portion of the highway, and pursuant to Section 13a55, they have a private right-of-way over Cedarwood Drive which right-of-way the defendant City of Meriden refuses to acknowledge. The plaintiff cited Luf v. Southbury, 188 Conn. 336 (1982) and Ventres v. Farmington,197 Conn. 663, 668 (1984) as authority for this proposition.
Defendant, contend: the plaintiff, cannot demonstrate that they are entitled to a preliminary injunction inasmuch their legal rights are not clear or are doubtful; that they will be unable to prove irreparable harm and the lack of an adequate remedy at law. Defendants further argue that the council resolution dead ending Cedarwood Drive was legislation enacted pursuant to the exercise of police power of a municipality. Defendants cite Blue Sky Bar, Inc. v. Stratford, 203 Conn. 14, 24
as follows:
 "`Whether conditions require the degree of regulation imposed by an ordinance is a matter for the judgment of the legislative body of the municipality.' Id., 265, citing Connecticut Theatrical Corporation v. New Britain, supra. CT Page 4094 Given the fact that courts indulge every legal presumption and reasonable inference of fact in favor of the validity of police power legislation. the existence of facts justifying the enactment are presumed. 6 E. McQuillin, supra, 24.31. `This strong presumption of legislative validity is overcome only when it plainly appears that the terms of the legislation are not reasonable or that they are not rationally adapted to the promotion of public health, safety, convenience, or welfare. Young v. West Hartford, 111 Conn. 27, 31-32, 149 A. 205 (1930).' Blue Sky Bar, Inc. v. Stratford, supra, 266. The party challenging the enactment bears the burden of overcoming this presumption."
At the evidentiary hearings evidence was offered which permits the court to find that the plaintiffs own a tract of undeveloped land in Wallingford, Connecticut, which abuts the Wallingford-Meriden town line for a distance in excess of 1300 feet. The rights of way of four public streets in Meriden abut the premises, to wit. Cedarwood Drive, Scanlon Court, Old Stagecoach Road, and Pose Circle. On various occasions the plaintiffs have sought permission to subdivide this property using these Meriden streets a, access to their premises. The most recent application to the Planning Zoning Commission of the town of Wallingford, Connecticut, was dated September 6, 1991. This application indicates that the name of the subdivision was Woodcrest; the location of the subdivision was South Curtis Street; the total number of acres involved is 59.93; the total lots proposed were 68. The subdivision maps submitted for Woodcrest, Exhibits A, D and J, with this application indicate that one of the means of entry and egress into the subdivision would be from a proposed road opening into Cedarwood Drive, in Meriden, Connecticut from Mezzei Drive in Wallingford.
Plaintiffs' Exhibit J, Sheet Two, of the plans for the proposed subdivision/residential development shows Mezzei Drive going northerly from Meetinghouse Lane in Wallingford, Connecticut, and entering Cedarwood Drive at or about its westerly terminus. The court finds that Cedarwood Drive proceeds easterly for a short distance and intersects South Curtis Street.
Plaintiffs' Exhibit L is a certified copy of the minute, CT Page 4095 of the Wallingford Planning Zoning Commission regular meeting of November 13, 1991. The minutes reveal a discussion as follows:
 If this subdivision is ever completed, the [traffic] situation will improve when [sic] ingress/egress from South Curtis St. People who live in the area and work in the eastern part of the area, will elect to take advantage of South Curtis St.
 The attorney further represented to the Commission that the plaintiffs could not
 . . . guarantee the town of Wallingford that we will have unobstructed access to ingress/egress to South Curtis St. It is important to Mr. Kovacs needs to be able to represent that this application, based on today's rules and regulations would have been approved but for the access.
Plaintiffs' Exhibits G, E, F, N and H are pertinent to this representation. Plaintiffs' Exhibits E and F indicate that prior to making application to the town of Wallingford, Connecticut, Planning Zoning Commission on September 6, 1991, the plaintiffs had obtained a road opening permit dated 1/03/90 at Cedarwood Drive to Rose Circle, in Meriden, Connecticut, and posted a bond of $2,250 with the Meriden City Engineer. Exhibit F indicates that the plaintiffs deposited this $2,250 with the City of Meriden by check number 736.
Exhibit N is a letter from the Planning Commission of the City of Meriden dated January 11, 1990, to the members of the City Council of the City of Meriden. This letter referred to a request regarding Cedarwood Drive from the South Central Neighborhood Organization. The letter indicates that the Planning Commission at its regular meeting of January 10, 1990, voted to recommend that the City Council deny the residents' request to declare Cedarwood Drive a dead and street. The commissioners' rationale for this recommendation include:
 1. That such connection would not adversely impact the Old Stagecoach Road, Scanlon Court and Lenore Drive neighborhood as such road would be approximately 150' from the collector street CT Page 4096 known as South Curtis Street;
 2. The alternative access to South Curtis Street would be a parallel road which would intersect with Curtis Street from 50-75' south of the Cedarwood Drive intersection with Curtis Street, thereby presenting safety problems common with intersections in close proximity of each other;
 3. The alternative route available to the applicant (see No. 2) could be detrimental to a vast wetland area;
 4. Said connection is in compliance with the Engineering Department's analysis.
Exhibit H is a committee report from the Economic Development Housing and Zoning Committee of the City Council of the City of Meriden dated 2/5/90. This report refers to the letter [Exh. N] concerning use of Cedarwood Drive as a direct access street from Wallingford. This committee report (Exh. H) recommended the following:
 The recommendation of the Planning Commission on this matter, dated 1/11/90, is denied and access into Cedarwood Drive directly from Wallingford is prohibited pursuant to Sec. 7-148 of the Connecticut General Statutes and the memo from Corp. Counsel dated 11/3/88, hereby adding Cedarwood Drive to the streets named in a report dated 11/8/89 that designated certain streets dead-end, (Scanlon Court, Rose Circle and Old Stagecoach Road) and ordered that they not be used a, direct access to Meriden directly from Wallingford.
On the same date, February 5, 1990, the City Council voted to dead end Cedarwood Drive. These exhibits indicate that before filing its subdivision application on 9/6/91, plaintiffs knew that the road opening permit for Cedarwood Drive, dated 1/03/90, from the Meriden City Engineering Department (Exh. E) had been effectively nullified by the Meriden City Council's action on February 5, 1990 dead ending Cedarwood Drive. CT Page 4097
The minutes of the Planning Zoning Commission (Exh. L) of the town of Wallingford at their regular meeting of November 13, 1991 indicate that the commissioners were aware of the problems with Meriden concerning access to Cedarwood Drive. One commissioner indicated,
 "I have a concern with the cul-de-sac. There are quite a few houses on North Lane. I would rather see that hooked up with the street in Meriden."
Commissioner Piscitelli explained that it was the problem access.
The cul-de-sac itself meets the requirements.
Commissioner Melvin:
 "The access to Old Stagecoach Rd. or to Cedarwood — that's in the courts, suing the City of Meriden.?"
It is apparent that the commissioners were well aware of the subject case which had been returned to the Superior Court on April 10, 1990.
 Mr. Piscitelli: Having listened to the applicant and the public, and this commission, and this has been going on for the last few years and I believe this is the 3-4 public hearing during that time. I think that the applicant has substantially met the regulations of the town of Wallingford and the various departments. But, one thing, the most important thing, he has not met, is the requirement that there be additional access into this piece of property. It is a large piece. And because of that, our regulations state that there must be another access from this piece of property. Because in dealing with the safety, health and welfare of the people of Wallingford, this is a vital interest. We also noted and Atty. Loughlin has pointed out, we are dealing with what is in our regulations today. I would recommend to this commission that we deny this application because it does not meet the one most important thing in our regulations, is the CT Page 4098 required additional access. I also want to let the applicant know that whenever they resolve this problem that they have, and if they ever resolve it, that if they come back before this commission, it us going to have to be resubmitted and will have to deal with what regulations are in force at that time. Even though at this point, on this day, it is the middle of the other regulations. He still hasn't met the most important access. I strongly recommend to deny it and I will vote to deny it.
Thereafter, the following motion was made by Commissioner Flynn and seconded by Commissioner Fitzsimmons.
 "I move that we deny a special permit and 68-lot subdivision on 59.93 acres for Kovacs and Mezzei on South Curtis Street and North Lane, as shown on plans entitled "Woodcrest. A Planned Residential Development" dated October 13, 1989, revised to 11/3/91." [sic]
 The reason for the denial is that the applicant has not provided a second or other access other than one access to the overall site and that fact makes it a violation, or not in compliance with the regulations of the Town of Wallingford as of this date.
On this state of facts the plaintiff, contend that the actions of the defendant City of Meriden in designating the public streets abutting the premises as dead end streets have prevented the plaintiffs from obtaining an approval from the Wallingford Planning Zoning Commission for subdivision of the premises. As a result of the actions of the defendant City of Meriden, the plaintiffs claim that they will suffer irreparable harm and have no adequate remedy at law.
The plaintiffs do not dispute that Connecticut General Statutes 148(c)(7)(b)(i) grants to municipalities such as Meriden the power to regulate and prohibit in a manner not inconsistent with the general statutes, traffic, the operation of vehicles on streets and highways, off-street parking, and on-street residential neighborhood parking areas in which CT Page 4099 on-street parking is limited to residents of a given neighborhood as determined by the municipality.
Plaintiffs claim that the action taken by the Council on February 5, 1990, was taken by the Council without any traffic study and support thereof and was not warranted by the traffic analysis performed by the Meriden city engineer and was contrary to the recommendations of the Meriden Planning Commission. They argue that the actions of the defendant City Council were predicated upon the unsubstantiated concerns of certain residents of the City of Meriden who reside in the Old Stagecoach Road neighborhood. Plaintiffs allege these concerns are not grounded in any particular traffic analysis. Plaintiffs also contend that there was no data to substantiate the neighborhood concern that vehicles exciting from the plaintiffs' proposed subdivision road, Mezzei Drive, will wander through the Old Stagecoach Road neighborhood instead of using Cedarwood Drive to directly access South Curtis Street.
In essence, plaintiffs ask the court to make a determination that the council's action in dead ending Cedarwood Drive was politically expedient and in excess of their legislative prerogatives.
The plaintiffs bear a heavy burden when they ask a court to overturn the legislative action of a municipal council acting within their designated powers.
The challenged resolution is an exercise of the police power conferred upon the town by statute for the purpose of protecting the public safety or the welfare of its inhabitants. Where the power exists, it must be exercised reasonably. The limit of the exercise of police power is necessarily flexible because it has to be considered in the light of the times and prevailing conditions. State v. Hillman, 110 Conn. 92, 105. Whether the times and conditions require legislative regulation as well as the degree of that regulation is exclusively a matter for the judgment of the legislative body. . . . Courts can interfere only in those extreme cases where the action taken is unreasonable, discriminatory or arbitrary. Carroll v. Schwartz, 127 Conn. 126,130. See also Connecticut Theatrical Corp. v. New Britain,147 Conn. 546, 553 (1960). "Every intendment is to be made in favor of the validity of [an ordinance], and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt" Connecticut Theatrical Corp. v. New CT Page 4100 Britain, supra, "[t]he court presumes validity and sustains the legislation unless it clearly violates constitutional principles . . . . If there is a reasonable ground for upholding it, courts assume that the legislative body intended to place it upon that ground and was not motivated by some improper purpose. . . . This is especially true when the apparent intent of the enactment is to serve some phase of the public welfare." State v. Gordon,153 Conn. 698 "Where municipal authorities act in accordance with formal requirements, courts will interfere only where `fraud, corruption, improper motives or influences, plain disregard of duty, gross abuse of power or violation of law enter into or characterize the action taken.'" Whitney v. New Haven, 58 Conn. 454,457 (1890); LaTorre v. Hartford, 167 Conn. 1 at 9 (1974). Pizzuto v. Newington, 174 Conn. 282 at 286 (1978); Blue Sky Bar Inc. v. Stratford, 4 Conn. Appellate 261, 265 (1985). Blue Sky Bar, Inc. v. Stratford, 203 Conn. 14 at 22 and 23.
Recognizing the heavy burden which they must sustain to override the legislative actions of the defendant, the plaintiffs request the court find that the actions of the defendant City of Meriden in designating Cedarwood Drive as a dead end street constitute a discontinuance of a portion of the highway and pursuant to 13a55, the plaintiffs have a right-of-way over Cedarwood Drive, which right-of-way the defendant refuses to acknowledge: citing Luf v. Southbury, 188 Conn. 336 (1982), the plaintiffs note that:
 "The effect of 13a55 is to alter the common law consequence of the discontinuance of a public highway. While, before the statute, discontinuance extinguished both the public easement of travel and the private easement of access; Antenucci v. Hartford Roman Catholic Diocesan Corporation, supra, 356; Peck v. Smith, supra, 146; after the statute, the public easement ceases but the private easement remains. The abutting owners now continue to have an easement of access over the discontinued highway. Their easement of necessity includes the right to travel over and to improve the existing roadbed of East Hill Road."
The plaintiffs submit that if the court finds a discontinuance or abandonment in this instance that the plaintiffs' right-of-way would entitle them to the equitable CT Page 4101 relief which they seek despite the presumptive validity of the ordinance dead ending Cedarwood Drive.
Abandonment or discontinuance is a question of fact Pizzuto v. Newington, 174 Conn. 282, 286 (1978). On the facts of this case the court concludes there has been no abandonment or discontinuance of Cedarwood Drive. Two-way traffic is still permitted on Cedarwood Drive despite the action of the Court of Common Council. Traffic using Cedarwood both before and after the action taken by the council has uninterrupted access to all of the other streets in the community. That is not to say that the council's action did not affect the plaintiffs. When Cedarwood Drive was accepted as a public highway two easements were created, the public easement of travel that permits the general public to pass over the highway at will and the private easement of access (enjoyed by plaintiffs) to the highway and to the connecting system of public roads. Luf v. Southbury, 188 Conn. 336, 341
(1982).
Thus whether or not there has been a 13a-55
discontinuance or abandonment the plaintiffs have an unabated right to use that roadbed in its improved condition or with whatever improvements they find it profitable to make, to get to and from their unimproved land Luf v. Southbury, supra, p. 348.
This private easement of access of the plaintiffs may have been seriously affected by the council's resolution. Plaintiffs contend this denial has prevented them from obtaining an approval from the Wallingford Planning and Zoning Commission for a subdivision of the premises. This interference with their easement of access is the basis for their claim for injunctive relief since they contend they will be irreparably harmed by the actions of the defendant and have no adequate remedy at law. In support of this plaintiff has offered evidence that there is no feasible or prudent alternative to the plaintiffs' proposed use of Cedarwood Drive for access to their property. The court is not convinced that plaintiffs have sustained their burden of proof on this issue at this stage of the proceedings. Plaintiffs' property is not landlocked in Wallingford. It remains to be seen whether other proposals with alternate means of access would be acceptable to the Wallingford authorities. If the diminution of access rights accomplished by dead ending Cedarwood Drive in practical effect so drastically impaired the economic utilization of their land that the denial of access to Cedarwood Drive is, as to them a taking they may be entitled to damages (Cone v. Waterford, 158 Conn. 276, CT Page 4102 279) however some impairment of access rights and some diminution in the total value of land do not without more justify a conclusion that there has been an unconstitutional taking.
Some such interference with common law property rights is frequently a consequence of a valid exercise of a police power by a municipal legislature. Luf v. Southbury, 188 Conn. 336, 354.
Although plaintiffs concede that Section 7-148(c)(7)(b) (i) authorizes municipalities to regulate traffic and the operation of vehicles on streets and highways they insist the resolution dead ending Cedarwood Drive was an arbitrary action unfounded on any rational basis. They point to the absence of traffic analysis, the contrary recommendations of the Planning Commission and the testimony of the Meriden City Engineer and Meriden City Planner that the proposed subdivision would not have a significant impact on the levels of service on streets in the City of Meriden in proximity to their property and would not create an unsafe condition on these streets.
As earlier indicated the court must indulge every legal presumption and reasonable inference of fact in favor of the validity of police power legislation, the existence of facts justifying the enactment are presumed Blue Sky Bar, Inc. v. Stratford, 203 Conn. 14, 24. The party challenging the enactment bears the burden of overcoming the presumption. The court concludes the plaintiffs have not sustained their burden. Plaintiffs offered no substantial evidence that their property is landlocked or that alternative means of access would not satisfy the Wallingford Planning Zoning authorities. Although such alternatives might impose greater economic burdens on plaintiffs, this fact alone is not conclusive. If it is eventually proven to the satisfaction of the court that the effect of the police power denial of access to their land from Cedarwood Drive has so drastically impaired the economic utilization of their lands that the denial of access is as to them a taking then an injunction relief must give way to monetary damages.
The plaintiffs have failed to establish that their legal rights are not doubtful or that they do not have a legal remedy for the actions of the Meriden City Council, moreover, they have not successfully overcome the presumption of validity attending the council's action. For these reasons the court cannot find they have a strong likelihood of prevailing at a final hearing. Accordingly, the application for a temporary injunction is denied. CT Page 4103
Dorsey, J.