LEWIS A. LIZOTTE ET AL. *v.* CONSERVATION COMMISSION
OF THE TOWN OF SOMERS ET AL.
(13912)
(13913)

SHEA, CALLAHAN, GLASS, COVELLO and BORDEN, Js.

Argued June 1—decision released August 21, 1990

*Ronald P. Sherlock,* for the appellants in both cases (plaintiffs).

*Edward J. McGuire,* for the appellees in both cases (named defendant et al.).

*David H. Wrinn,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* attorney general, and *Joseph Rubin,* assistant attorney general, for the appellee (defendant commissioner of environmental protection).

*David B. Losee* and *Gisele M. Drisdelle* filed a brief for the Home Builders Association of Connecticut, Inc., as amicus curiae.

SHEA, J. The dispositive issue in these appeals is the validity of a regulation adopted by the named defendant, the conservation commission of the town of Somers (commission), prohibiting the location of waste disposal systems and buildings within specified distances of an inland wetland or watercourse. In the factual context presented at trial involving the application of the regulation to tracts of undeveloped land, we conclude that the regulation is valid and, therefore, affirm the judgment of the trial court.

The plaintiffs[1] own undeveloped land, containing wetlands and watercourses, located in the town of Somers, and were, at the time these actions were initiated, engaged in the business of constructing residential developments within the town of Somers. The defendant commission[2] revised its inland wetlands and watercourses regulations on July 5, 1988, adopting a regulation that, in general, establishes distances from the seasonal high water level of a watercourse or inland wetland, inside of which certain construction activities are prohibited. For example, the regulation prohibits, with minor exceptions, any septic system or any building constructed for the purpose of sheltering animals

---

[1] In addition to the named plaintiff, Chester M. Ladd, Richard S. Pollio and Daniel R. Roulier were named as additional plaintiffs in both cases.

[2] In addition to the named defendant, the town of Somers and the commissioner of environmental protection were named as additional defendants in each case.

within 150 feet of the seasonal high water level, and prohibits any other building within fifty feet of the same level.[3]

In the first case, the plaintiffs sought to challenge the adoption of the regulation by means of an appeal pursuant to General Statutes § 22a-43.[4] The trial court

---

[3] The regulation, § 6.4 of the revised inland wetlands and watercourses regulations of the town of Somers, provides in part: "a. No septic system, tank, leach field, dry well, chemical waste disposal system, manure storage area, or any other pollution source (all hereinafter referred to as 'system') shall be constructed or maintained in such a way that the closest point of any such system is nearer than one hundred fifty (150) feet to the nearest edge of the seasonal high water level of a watercourse or inland wetland. No system, at any distance from such watercourse or inland wetland, shall be constructed or maintained in such a manner so as to drain into any such watercourse or inland wetland. The one hundred fifty (150) foot separation may be reduced to one hundred (100) feet for one (1) and two (2) family dwellings and commercial buildings generating less than 225 gallons per day, subject to the provisions of the State of Connecticut Public Health Code and Basic Building Code . . . .

"b. No building used for the purpose of sheltering animals shall be constructed in such a way that the closest point to the nearest edge of the seasonal high water level of a watercourse or inland wetland is less than one hundred fifty (150) feet from the watercourse or inland wetland. No other building or structure shall be constructed in such a way that the closest point to the nearest edge of the seasonal high water level of a watercourse or inland wetland is less than fifty (50) feet from said watercourse or inland wetland. An erosion stabilization and sedimentation control plan shall be submitted to the Somers Sanitarian for his review and approval where the building is within one hundred (100) feet of a watercourse or inland wetland . . . ."

[4] General Statutes § 22a-43 provides in part: "(a) The commissioner or any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality or any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action made pursuant to said sections may, within fifteen days after publication of such regulation, order, decision or action appeal to the superior court for the judicial district where the land affected is located, and if located in more than one judicial district, to said court in any such judicial district, except if such appeal is from a contested case, as defined in section 4-166, such appeal shall be in accordance with the provisions of section 4-183, except

held, however, that the plaintiffs had not been "aggrieved" by the adoption of § 6.4 of the Somers regulations, since the same restrictions had been adopted in 1986, as part of the zoning regulations of the town of Somers. The trial court reasoned: (1) "The adoption of the new [inland wetlands and watercourses] regulation could not affect the value of the plaintiffs' properties because the same regulation already was in existence in [the zoning] regulations"; and (2) "[t]he plaintiffs failed to appeal the adoption of the [zoning] regulation in 1986 and having failed to do so, are trying for a 'second bite from the apple.' "

In the second case, the plaintiffs, alleging that the value of their property for development purposes had been "substantially reduced," challenged the validity of the regulation, seeking declaratory and other relief. The plaintiffs claimed that the regulation: (1) does not conform to the stated purposes and policies of the Inland Wetlands and Watercourses Act (IWWA); see General Statutes § 22a-37;[5] (2) does not conform with regulations promulgated by the commissioner of environmental protection; (3) has no reasonable relation to the stated purpose of the IWWA; (4) contains mandatory restrictions that are not necessary to preserve and protect inland wetlands and watercourses within the town of Somers; (5) detrimentally affects the plaintiffs' ability to develop their property fully; and (6) is unconstitutional and confiscatory, since it substantially reduces the value of their property without a legitimate reason.[6]

venue shall be in the judicial district where the land affected is located, and if located in more than one judicial district to the court in any such judicial district." This statute was amended, effective October 1, 1989, by Public Acts 1989, No. 89-356, § 9.

[5] "[General Statutes] Sec. 22a-37. SHORT TITLE. Sections 22a-36 to 22a-45, inclusive, shall be known and may be cited as 'The Inland Wetlands and Watercourses Act.' "

[6] The plaintiffs have not pursued any constitutional claims on appeal. Further, although they presented evidence that, with respect to one proposed

The trial court referred to the following facts and relevant testimony in its memorandum of decision. Section 6.4 of the Somers regulations had as its origin the virtually identical provisions of the zoning regulations adopted previously by the town of Somers. Although restrictions similar to those contained in § 6.4 do not exist in regulations adopted by the department of environmental protection (DEP) pursuant to the IWWA, or in any "model" regulations, § 6.4 was adopted by the commission "to prevent injury to the wetlands."

Douglas E. Cooper, an employee of the DEP, testified that his department had assisted in the adoption of the Somers regulations, and that it was his, as well as the department's, opinion that those regulations did comply with the IWWA, even though the IWWA did not set forth any specific set-back requirements for buildings or septic systems. Cooper also stated that the set-back requirement was adopted to avoid pollution of wetlands and watercourses, although he conceded that "there is nothing magic about the 150 foot set back." Cooper regards wetlands as a "fragile national resource," and noted that many towns had adopted set-back requirements after this court's decision in *Aaron* v. *Conservation Commission,* 183 Conn. 532, 441 A.2d 30 (1981).

Cooper also testified that he had witnessed many septic systems that had failed, even though they had been adequately designed for the use for which they had been intended. He stated that problems could result from a variety of causes,[7] and that, in his opinion, one-half

---

subdivision, § 6.4 of the Somers regulations would result in a loss of 25 lots valued at $1,500,000, the plaintiffs do not allege that the regulation, as applied to them, constituted a "taking" of their property. See *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 562–63, 552 A.2d 796 (1989).

[7] According to the trial court's memorandum of decision, Cooper testified that some of these "problems were caused by excessive numbers of

of all septic systems would fail within twenty years. He said that a town relying on ground water supplies had a significant interest in protecting the quality of the water in those sources, and concluded that the restrictions contained in § 6.4 of the Somers regulations were reasonable, on the basis of his experience at the DEP as well as his observations of problems at the local level.[8]

Steven R. Jacobs, the sanitarian of the town of Somers, testified that he was concerned with the quality of the town's water sources, since only 5 to 10 percent of the town is serviced by public sewer systems. Jacobs stated that there are two major aquifers in the town of Somers capable of rendering an adequate water supply to the town, and that five of the six wells being operated by the Connecticut Water Company draw their water from these aquifers. According to Jacobs, 20 percent of the town's 9500 residents are serviced by the water company, while the remainder rely upon private wells. Jacobs stated that about forty septic systems are repaired in Somers each year.

Finally, Simon Lipton, a resident of Somers for over seventy years and chairman of the commission, testified that failed septic systems had been a problem in Somers for many years. Lipton stated that the soil in two areas of the town had a clay base and could not, therefore, handle any sewage runoff from failed sep-

persons living in the house, luxurious use of water, painting debris from cleaning brushes and rollers in the bathtubs, hazardous materials thrown into the house drains [wreaking] havoc with biological aspects of the systems and the disposal of fats and greases and excessive use of garbage disposals for items that should not go down the drains."

[8] Cooper testified for both the plaintiffs and the defendants. The plaintiffs also offered the testimony of Sebastian Amenta, a registered engineer and employee of a group that was assisting the plaintiffs in their development projects, who was of the opinion that fixed set-back requirements were unwarranted, and that all distances should be based on technical information concerning each proposed site.

tic systems. Lipton testified that these areas of the town were heavily populated and that it had become necessary to install small disposal facilities, since sewage from failed septic systems had run onto lawns, into the streets and then into drainage pipes.

After reviewing this evidence, the trial court concluded, in its memorandum of decision, that the issue before it was whether the regulation's prohibitions were "rationally related to the protection of the public health, safety and general welfare of the community." See *Beacon Falls* v. *Posick*, 212 Conn. 570, 583, 563 A.2d 285 (1989). Noting that the prohibition of certain activities, by means of zoning regulations, had been upheld by courts of this state, the trial court ruled that, in light of the evidence presented, there was a rational basis for the adoption of § 6.4 of the Somers regulations. The court also concluded that the regulation did not go beyond the limits of the relevant enabling legislation, and, therefore, held that the regulation was "a valid exercise of the police power and [was] entirely consistent with the goals and policies contained in the [IWWA]."

I

In the first case, an administrative appeal from the adoption of § 6.4, the plaintiffs seek to attack the trial court's conclusion that they had not been aggrieved by the adoption of that amendment to the Somers regulations because the prohibitions it contains were already to be found in the town's zoning regulations. The basis of the plaintiffs' argument is that a land owner may, by means of an application for a variance, obtain relief from the prohibitions of the applicable zoning regulations under special circumstances, but, as they maintain, may not "obtain similar relief from [§] 6.4 of the inland wetlands regulation." We have no need to address this claim, however, because the issues under-

lying the plaintiffs' administrative appeal will be rendered moot by our resolution of the appeal in the second case.

In the first case, the plaintiffs challenged the validity of § 6.4 on grounds that were, with one exception, virtually identical to those on which they relied in the second case, in which they sought a declaratory judgment that the regulation was invalid. The sole exception was the allegation, in the complaint in the first case, that the commission's adoption of § 6.4 was unlawful because it had "[voted] to amend, in its entirety, the Somers Inland Wetlands Regulations without stating on the record at the meeting during which the vote was taken the reasons for the particular changes." The plaintiffs conceded, during oral argument, that this claim was neither briefed nor presented to the trial court and was, therefore, abandoned before that court. See *Blue Sky Bar, Inc.* v. *Stratford,* 203 Conn. 14, 17 n.4, 523 A.2d 467 (1987). They concede further that the remaining grounds on which they sought to challenge the adoption of § 6.4 will necessarily be decided by our resolution of the issues in the second case. The plaintiffs' concessions are amply supported by the record and, therefore, the appeal in the first case must be dismissed as moot. See *Staples* v. *Palten,* 214 Conn. 195, 202 n.1, 571 A.2d 97 (1990) (*Healey, J.,* dissenting), and cases cited therein.

## II

In their appeal in the second case, the plaintiffs claim that § 6.4 of the Somers regulations is invalid because: (1) it exceeds the scope of the relevant enabling legislation, General Statutes § 22a-42;[9] and (2) it is not

---

[9] General Statutes § 22a-42 provides in part: "(a) To carry out and effectuate the purposes and policies of sections 22a-36 to 22a-45, inclusive, it is hereby declared to be the public policy of the state to require municipal regulation of activities affecting the wetlands and watercourses within the territorial limits of the various municipalities or districts."

"necessary"; General Statutes § 22a-42 (c);[10] to effec-
tuate the purpose of the IWWA, "because the regu-
lated activities which are prohibited . . . may or may
not have a detrimental impact on . . . wetland areas."

At the outset, it is appropriate to note the reasons
set forth in General Statutes § 22a-36 for the enact-
ment of the IWWA. The legislature has found that
"[t]he inland wetlands and watercourses of the state
of Connecticut are an indispensable and irreplaceable
but fragile natural resource with which the citizens of
the state have been endowed" and that "[t]he preser-
vation and protection of the wetlands and watercourses
from random, unnecessary, undesirable and unregu-
lated uses, disturbance or destruction is in the public
interest and is essential to the health, welfare and
safety of the citizens of the state." General Statutes
§ 22a-36. The purposes of the act, therefore, are, inter
alia, to "protect the citizens of the state by making pro-
visions for the protection, preservation, maintenance
and use of the inland wetlands and watercourses by
minimizing their disturbance and pollution; maintain-
ing and improving water quality in accordance with the
highest standards set by federal, state or local author-
ity . . . and protecting the state's potable fresh water
supplies from the dangers of . . . pollution . . . by
providing an orderly process to balance the need for
the economic growth of the state and the use of its land
with the need to protect its environment and ecology
in order to forever guarantee to the people of the state,
the safety of such natural resources for their benefit

---

[10] General Statutes § 22a-42 (c) provides in part: "Each municipality, act-
ing through its legislative body, may authorize any board or commission,
as may be by law authorized to act, or may establish a new board or com-
mission to promulgate such regulations, in conformity with the regulations
adopted by the commissioner pursuant to section 22a-39, as are *necessary*
to protect the wetlands and watercourses within its territorial limits."
(Emphasis added.)

and enjoyment and for the benefit and enjoyment of generations yet unborn." General Statutes § 22a-36.

In order to carry out these objectives, the legislature has required each municipality in this state either to "establish an inland wetlands agency or authorize an existing board or commission to carry out the provisions of [the IWWA]." General Statutes § 22a-42 (c). Each municipality is expressly authorized through its designated agency to adopt regulations that "are necessary to protect the wetlands and watercourses within its territorial limits"; General Statutes § 22a-42 (c); provided that any regulations adopted are "in conformity with the regulations adopted by the commissioner pursuant to section 22a-39[11] . . . ." General Statutes § 22a-42 (c). "As we stated in *Aaron* v. *Conservation Commission,* supra, 541, '[i]t is this broad statutory mandate authorizing regulations on both the state and local levels, with specific legislative findings and declaration of policy, that serves as the setting in which we evaluate the claims of the parties.' " *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 560, 552 A.2d 796 (1989). "In doing so, we are mindful that the statutory scheme of this legislation envisages its adaptation to infinitely variable conditions for the effectuation of the purposes of these statutes." *Aaron* v. *Conservation Commission,* supra, 541.

## A

The plaintiffs' principal claim in the second case is that § 6.4 of the Somers regulations is invalid because it is not in "conformity" with the statutory scheme set

---

[11] General Statutes § 22a-39 provides in part: "The commissioner shall . . . .

"(f) Adopt such regulations, in accordance with the provisions of chapter 54, as are necessary to protect the wetlands or watercourses or any of them individually or collectively . . . ."

forth by the legislature in the IWWA. Specifically, the plaintiffs claim that § 6.4 conflicts with the IWWA because regulated activities that might be permitted under the IWWA, after approval of a permit application by the relevant governing agency, are absolutely prohibited by § 6.4. Having concluded in *Aaron* v. *Conservation Commission,* supra, 542, that the IWWA authorizes local regulation of activities beyond the actual boundaries of a wetland or watercourse that may be adversely affected by such activities, we must now decide the extent of such regulatory authority with respect to future developments of tracts of land near wetlands and watercourses. More precisely, the question is whether the authority of an agency to regulate activities on land outside the boundaries of a wetland or watercourse may be exercised with respect to new subdivisions by creating a uniform buffer zone rather than by imposing such a condition as each separate application for agency approval is considered.

The IWWA provides that "no regulated activity shall be conducted upon any inland wetland and watercourse without a permit." General Statutes § 22a-42a (c). " 'Regulated activity' means any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses, but shall not include the specified activities in section 22a-40."[12] General Statutes § 22a-38 (13). "Any person proposing to conduct or cause to be conducted a regulated activity upon an inland wetland and water-

[12] General Statutes § 22a-40 specifies not only those uses that will be permitted as of right in a wetland or watercourse, but also activities that will be considered as "nonregulated uses . . . provided they do not disturb the natural and indigenous character of the wetland or watercourse . . . . " The plaintiffs do not claim that § 6.4 of the Somers regulations is in conflict with this portion of the IWWA.

course shall file an application with the inland wetlands agency of the town or towns wherein the wetland in question is located." General Statutes § 22a-42a (c). Finally, "[i]n granting, denying or limiting any permit for a regulated activity the inland wetlands agency shall consider the factors set forth in section 22a-41, and such agency shall state upon the record the reason for its decision." General Statutes § 22a-42a (d).

In support of their claim that the regulation conflicts with the statute, the plaintiffs rely on the language of General Statutes § 22a-42 (e), which states in part: "Any ordinances or regulations [adopted by a municipality or district] shall be for the purpose of effectuating the purposes of sections 22a-36 to 22a-45, inclusive, and, a municipality or district, in acting upon ordinances and regulations *shall give due consideration to the standards set forth in section 22a-41.*"[13] (Emphasis added.) On the basis of this language, the plaintiffs argue that the standards of General Statutes § 22a-41 must be applied on a case-by-case basis and that § 6.4 of the Somers regulations, which makes no provision for variations of its requirements through the permit process, is invalid because it conflicts with the proce-

---

[13] General Statutes § 22a-41 provides in part: "(a) In carrying out the purposes and policies of [the IWWA], including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:

"(1) The environmental impact of the proposed action;

"(2) The alternatives to the proposed action;

"(3) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity;

"(4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity;

"(5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and

"(6) The suitability or unsuitability of such activity to the area for which it is proposed."

dures contemplated by the IWWA. Those procedures include § 22a-41 (a), which requires that "[i]n carrying out the purposes and policies of [the IWWA] . . . the commissioner shall take into consideration all relevant facts and circumstances . . . ." This broad inquiry must include, but is not limited to, six factors related to the consequences, alternatives to and suitability or unsuitability of any proposed activity. General Statutes § 22a-41; see footnote 13, supra.

In *Aaron,* we stated that an appropriate test "used to determine whether a conflict exists [between a local ordinance and a statute] is whether the ordinance permits or licenses that which the statute forbids, or prohibits that which the statute authorizes; if so, there is a conflict. If, however, both the statute and the ordinance are prohibitory and the only difference is that the ordinance goes further in its prohibition than the statute, but not counter to the prohibition in the statute, and the ordinance does not attempt to authorize that which the legislature has forbidden, or forbid that which the legislature has expressly authorized, there is no conflict." *Aaron* v. *Conservation Commission,* supra, 544. This test is founded upon the principle that "[a] local ordinance, enacted pursuant to the police power, is not necessarily inconsistent with a state law on the same subject just because the ordinance provides higher standards than the statute." Id., 543.

We perceive no conflict between § 6.4 of the Somers regulations and the IWWA. First, the IWWA specifically authorizes the rejection of permit applications for conducting regulated activities, so long as the evaluation process set forth in § 22a-41 is complied with. General Statutes § 22a-42a (d). Thus, contrary to the plaintiffs' claim, the IWWA does not "expressly authorize" that which is prohibited by § 6.4 of the Somers regulations. Second, § 6.4 of the Somers regulations

does not prohibit all activity in areas adjacent to wetlands or watercourses, the commission having chosen, instead, to limit the scope of § 6.4 to activities that pose a significant pollution threat to those areas. Other regulated activities, therefore, might be allowed under § 6.4, provided that the permit application is approved by the commission. Finally, we have previously stated that " '[t]he power to regulate . . . entails a certain degree of prohibition' "; *Blue Sky Bar, Inc.* v. *Stratford,* supra, 20; and have recognized that prohibitions of certain activities within municipalities have been upheld when "the prohibitions were rationally related to the protection of the municipalities' public safety, health and general welfare." *Beacon Falls* v. *Posick,* supra, 583, and cases cited therein. In light of these considerations, § 6.4 of the Somers regulations can be viewed as a legislative determination that, regardless of the circumstances present in each case, no permits will be issued for the specified activities, since they pose an unacceptable hazard to the wetlands or watercourses within the town of Somers. In this regard, the remaining issue before us is not whether the standards of § 22a-41 must be utilized by municipal authorities on a case-by-case basis for the evaluation of proposed activities adjacent to a wetland or watercourse, but whether the commission considered and applied the statutory standards when it adopted § 6.4 of the Somers regulations.[14]

The plaintiffs have not, however, claimed before this court or the trial court that the commission failed to consider the standards contained in § 22a-41 prior to the adoption of § 6.4 of the Somers regulations. In the

[14] The issue of whether the prohibitions contained in § 6.4 of the Somers regulations are rationally related to the protection of the public health, safety and general welfare inevitably merges with the plaintiffs' claim that § 6.4 is not "necessary" to protect the wetlands and watercourses within the town of Somers. See Part II B of this opinion; *Beacon Falls* v. *Posick,* 212 Conn. 570, 584–85, 563 A.2d 285 (1989).

absence of any evidence to the contrary, we will presume that the commission fulfilled, when it adopted the regulation, its statutory obligations set forth in §§ 22a-41 and 22a-42 (e). See *Carothers* v. *Capozziello,* 215 Conn. 82, 105, 574 A.2d 1268 (1990). Even if we were to entertain such a claim at this late stage of the proceedings, we note that the trial court had before it evidence regarding why the commission chose, when enacting § 6.4, to adopt a blanket prohibition rather than a process of permit application subject to review and approval or denial. This decision was based in large part on: (1) the poor drainage capability of the soil in Somers; (2) past sewage drainage problems within the town; (3) the town's reliance on local aquifers for potable water supplies; and (4) the potential pollution hazard posed to the aquifers by the drainage of sewage. Further, the trial court was also furnished a copy of a letter which indicated that the commissioner of the DEP had found the proposed Somers regulations to be in "conformance" with both the IWWA and the applicable regulations enacted by that department. See Regs., Conn. State Agencies § 22a-39-11.[15] Thus, even if this issue had been presented to the trial court, there was evidence before it from which it could have concluded that the factors specified by § 22a-41 were adequately taken into account prior to the adoption of § 6.4 of the Somers regulations.

---

[15] Section 22a-39-11 of the Regulations of Connecticut State Agencies provides in pertinent part: "[§ 22a-39-11.1] All regulations . . . promulgated or amended by local wetlands agencies, pursuant to the Act, shall be submitted to the Commissioner not later than ten (10) days after their adoption.

"[§ 22a-39-11.2] The Commissioner shall examine such regulations, including maps and amendments, to determine their conformity with the Act and with these regulations in terms of a) procedural safeguards, b) completeness of wetland and water course coverage, c) adequacy of enforcement machinery and information gathering procedures, and d) substantial adherence to the policies and goals of the Act."

Under all of these circumstances, we conclude that the trial court correctly concluded that § 6.4 of the Somers regulations was not in conflict with the IWWA or the regulations adopted by the commissioner of DEP.

B

The plaintiffs also claim that § 6.4 of the Somers regulations is invalid because it is not "necessary to protect the wetlands and watercourses within [the] territorial limits" of the town of Somers and thus does not comply with that criterion for regulations of an inland wetlands agency. General Statutes § 22a-42 (c). We conclude that the plaintiffs have not met the significant burden facing them in making such a challenge.

"[W]hen a statute authorizes a municipality to regulate a certain activity, a prohibition of that activity will be valid if it is rationally related to the protection of the community's public health, safety and general welfare." *Beacon Falls* v. *Posick,* supra, 583. In regard to the "necessary" requirement of § 22a-42 (c) for wetland regulations, we have previously stated that " 'necessary' should not be interpreted as meaning indispensable, but rather, as that which is reasonably designed to effectuate the stated purposes of the wetlands statutes." *Cioffoletti* v. *Planning & Zoning Commission,* supra, 561. Although we have recognized that the policy decision to protect wetlands and watercourses must be balanced against the productive use of privately owned land; *Red Hill Coalition, Inc.* v. *Conservation Commission,* 212 Conn. 710, 719, 563 A.2d 1339 (1989); we have also indicated that this balancing process is more appropriately conducted in a legislative rather than a judicial setting. Thus, "[a]n agency which has the authority to enact regulations is vested with a large measure of discretion, and the burden of

showing that the agency has acted improperly rests upon the one who asserts it." *Aaron* v. *Conservation Commission,* supra, 537; see *Blue Sky Bar, Inc.* v. *Stratford,* supra, 23. "Every intendment is to be made in favor of the validity of the ordinance, and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt." *Connecticut Theatrical Corporation* v. *New Britain,* 147 Conn. 546, 553, 163 A.2d 548 (1960); *Blue Sky Bar, Inc.* v. *Stratford,* supra; *Aaron* v. *Conservation Commission,* supra.

On the basis of the evidence presented to it, the trial court concluded: "The soil in Somers was basically clay in substance providing very poor drainage; the Town had been faced with severe sewage drainage problems for years; the Town's basic water supply consisted of two large [aquifers] of water; 80% of the homes depended on well water; and the private water company serves five (5) of its six wells by drawing from the [aquifers]." The court held, therefore, that "the Somers regulation does have a rational basis." We conclude that the court was justified in reaching its conclusion, since the adoption of § 6.4 of the Somers regulations was "reasonably designed to protect the town's wetlands and watercourses." *Cioffoletti* v. *Planning & Zoning Commission,* supra, 561. The commission could reasonably have concluded that, regardless of whether a specific prohibited activity may or may not adversely affect the town's wetlands, the risk of pollution outweighed in all instances the benefits to be gained by allowing case-by-case analysis of each application for a regulated use. The plaintiffs have, therefore, failed to establish the invalidity of the regulation beyond a reasonable doubt.

The judgment is affirmed.

In this opinion CALLAHAN, GLASS and BORDEN, Js., concurred.

COVELLO, J., dissenting. I respectfully disagree with the conclusion that there is "no conflict between § 6.4 of the Somers [Conservation Commission] regulations and the [Inland Wetlands and Watercourses Act. (IWWA)]." I submit that § 6.4 conflicts with the statutory mandate set out in the IWWA that requires a case-by-case balancing of the tension that exists between society's determination to protect its ecologically fragile wetlands and watercourses and the private landowner's inalienable right to make productive use of his land. The Somers regulation, by absolutely barring certain activities, subverts the expressly articulated legislative mandate to balance the competing interests involved through a permitting process.

Section 6.4 establishes mandatory separation distances outside of a wetlands area that must exist between the wetlands area itself, and either: (a) any portion of a septic system; or (b) a structure as follows:

A. <u>Septic System</u>

| | |
|---|---|
| Wetland or Watercourse | 100' |

B. <u>Building Sheltering Animals</u>

| | |
|---|---|
| Wetland or Watercourse | 150' |

C. <u>All Other Buildings</u>

| | |
|---|---|
| Wetland or Watercourse | 50' |

Section 6.4 establishes these minimum separation distances irrespective of the effect of the proposed septic system or structure on a particular wetland area. There are no mandatory separation distances in either the IWWA, the Department of Environmental Protection regulations dealing with the IWWA, or the state Model Inland Wetlands Act.

General Statutes § 22a-36 provides that the purpose of the IWWA is to provide "an orderly process to *balance* the need for the economic growth of the state and

the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment and for the benefit and enjoyment of generations yet unborn." (Emphasis added.) An absolute prohibition against all building within arbitrarily established distances from a wetland or watercourse is scarcely consistent with a legislative mandate "to balance the need for the economic growth of the state and the use of its land."

That the framers of the IWWA envisaged a balancing of these interests on a case-by-case basis is borne out by the fact that General Statutes §§ 22a-36, 22a-38 (13), 22a-41 and 22a-42a (d) all speak in terms of "regulated activities," activities that may be approved on a permit basis, and may in fact pollute a given wetland or watercourse.[1] In determining if a regulated activity is to be permitted, local inland wetlands commissions are required to consider the specific criteria set forth in § 22a-41.[2] These include a finding

---

[1] General Statutes § 22a-38 (13) provides: " 'Regulated activity' means any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses, but shall not include the specified activities in section 22a-40."

[2] General Statutes § 22a-41 provides: "FACTORS FOR CONSIDERATION OF COMMISSIONER. FINDING OF NO FEASIBLE OR PRUDENT ALTERNATIVE. (a) In carrying out the purposes and policies of sections 22a-36 to 22a-45, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:

"(1) The environmental impact of the proposed action;

"(2) The alternatives to the proposed action;

"(3) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity;

"(4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity;

"(5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and

"(6) The suitability or unsuitability of such activity to the area for which it is proposed.

of "[t]he suitability or unsuitability of such activity to the area for which it is proposed," "interference with . . . the reasonable use of property" and, in the event of the issuance of a permit, a finding "that a feasible and prudent alternative does not exist." Such language that seems to me to call for individualized consideration of each "area," is hardly consistent with a regulation that in all events prohibits certain activities throughout an entire town.

Further, a local regulation that absolutely prohibits certain "regulated activities"[3] *outside* of a wetland or watercourse is inconsistent with a statutory protocol that establishes a permit process to allow "regulated activities" *within* a wetland or watercourse. It seems to me totally illogical that § 6.1 of the Somers regulations authorizes regulated activities within a wetland or watercourse upon receipt of a permit to do so[4] while

---

"(b) In the case of an application which received a public hearing, a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor shall be stated on the record."

[3] "Somers Conservation Commission Regulations,

Section 2

DEFINITIONS

2.1 As used in these regulations

\* \* \*

W. 'REGULATED ACTIVITY' means any operation within or use of a wetland or watercourse involving removal, relocation, or deposition of material; or any obstruction, construction, alteration, or pollution of such wetlands or watercourse, but shall not include the specified activities of Section 4 of these regulations."

[4] "Somers Conservation Commission Regulations,

Section 6

REGULATED ACTIVITIES TO BE LICENSED

6.1 No person shall conduct or maintain a regulated activity in or affecting a regulated area of the Town of Somers or shall proceed with a proposal on which land contains a wetland or watercourse which may or may not be affected, without first obtaining a permit for such activity from the Conservation Commission of the Town of Somers."

§ 6.4 contains a blanket prohibition against what would otherwise be a "regulated activity" outside of a wetland or watercourse.

"A test frequently used to determine whether a [local ordinance is inconsistent with a state statute] is whether the ordinance . . . prohibits that which the statute authorizes; if so, there is a conflict." *Aaron* v. *Conservation Commission,* 183 Conn. 532, 544, 441 A.2d 30 (1981). The IWWA specifically allows an individual to conduct regulated activities either in or near a wetlands area upon issuance of a permit. By not providing for the permit process and by absolutely forbidding certain regulated activities within prescribed distances from a wetland, § 6.4 prohibits that which the statute has expressly authorized, i.e., the right to apply for a permit to conduct regulated activities within or near a wetland. Since § 6.4 of the Somers regulations clearly exceeds the scope of its enabling legislation, I submit that the enactment is invalid.

Accordingly, I dissent.