[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 20, 1996
The defendant, a business engaged in the collection and disposition of trash, has been charged with violating § 8(c) CT Page 5552 of an ordinance of the town of East Lyme, which ordinance purports to "regulat(e) the storage, collection and disposal of solid waste" and to provide for a system of refuse collection. Section 8(c) reads:
 The weight of the refuse collected within the Town shall be calculated by weighing each vehicle used for refuse collection after collecting refuse within the town. For that purpose, each refuse collector shall have its vehicles weighed on scales owned and operated by the town after collecting refuse within the town during the hours that scales are in operation.
The ordinance at issue has had a checkered career. Although the entire ordinance addresses many features of waste management and is largely noncontroversial, § 8(a) and (b) provided for a fee to be paid to the town of East Lyme by each hauler of waste, in an amount proportional to amount of trash hauled. The amount of trash hauled, in turn, was to be ascertained through compliance with § 8(c). The fees generated by the program were intended to be in an amount sufficient to fund East Lyme's share of a regional waste disposal facility in Preston.
The enforcement of subsections (a) and (b) was enjoined by Chief United States District Judge Peter C. Dorsey in December, 1995, in Connecticut Carting Co. v. Town of East Lyme, Civil No. 3:95CV1493 (PCD). Judge Dorsey found that the actual fees charged were substantially greater than the "tipping fees" at facilities other than Preston; once the fees were paid, there apparently was no further charge if the waste was delivered to Preston. As the fee system had the practical consequence of requiring waste to be delivered to Preston, it was a "flow control" ordinance in different clothing and therefore constituted an impermissible burden on interstate commerce. See CA Carbone, Inc. v. Town ofClarkston, 511 U.S. 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994).
The defendant claims that, although Judge Dorsey did not specifically address § 8(c), nor, apparently, was any issue made of that subsection, enforcement of that subsection also is violative of the interstate commerce clause. Alternatively, the defendant claims that, standing alone, the subsection is an impermissible use of the police power. Finally, the defendant claims that subsection (c) is not severable from the subsections which were found to be unconstitutional, and must fall with subsections (a) and (b). CT Page 5553
Both sides have submitted briefs and affidavits. The defendant presented an affidavit of one of its principals; the thrust of the affidavit is that the business operates for a much greater period of time than the hours that the scales are open, which are eight hours a day Monday through Friday and six hours on Saturday. Compliance, then, "restricts the operation of (the) business." The town submitted the affidavit of its director of public works, who indicated that the town was interested in the continuing enforcement of § 8(c) because it was critical for planning purposes to know the amount of trash being generated in the town.
 I
We first turn to the claim that enforcement of § 8(c) constitutes an impermissible burden on interstate commerce. It has been held that the hauling, processing and disposing of trash is indeed "commerce" for purposes of the Commerce Clause of the United States Constitution. CA Carbone, Inc., supra at114 S.Ct. 2022. Because only Congress has the power to regulate interstate commerce, a local ordinance may be unconstitutional if it affects interstate commerce. Ordinances which have some impact on interstate commerce have been categorized as those which regulate evenhandedly, with only an incidental effect on interstate commerce, and those which discriminate against interstate commerce. See Hughes v. Oklahoma, 441 U.S. 322, 336 (1979). "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." (Citations omitted.) Blue Sky Bar, Inc.v. Stratford, 203 Conn. 14, 30 (1987).
The town of East Lyme, and indeed every town in this age, has a legitimate interest in waste disposal, "[a]s a matter of legal obligation, custom and practice." Connecticut Carting Co. v. Townof East Lyme, supra at 6. The mere weighing of trucks within the town of East Lyme is absolutely evenhanded in its effect on interstate commerce: § 8(c) has no direct or indirect effect on the matter of where the trash will be disposed. There is no hauler, landfill or treatment facility that is at a greater or lesser advantage because of the requirement that trucks be weighed before leaving the town with trash.[1] While it is true that a limitation on the hours that trucks could operate may CT Page 5554 serve to increase the cost of doing business, and ultimately may have some effect on the price charged to consumers, that is a potential local burden and, again, has no impact one way or another on interstate commerce.
As there is little or no burden on interstate commerce, and the ordinance operates evenhandedly, there is no discrimination against interstate commerce and the Commerce Clause is not violated.
The defendant also claims that the ordinance is an impermissible use of the police power of the municipality. In order to pass muster under the police power, an ordinance must be reasonably related to the public health, safety, morality or welfare. State v. Gordon, 143 Conn. 698, 703 (1956); Blue SkyBar, Inc., supra, 22. The regulation must have a reasonable relationship to its objective and must be reasonably calculated to achieve its objective. Caldor's, Inc. v. Bedding Barn, Inc.,177 Conn. 304, 317 (1976). Some flexibility is necessary, however, and courts should interfere with the locality only where the ordinance is unreasonable, discriminatory or arbitrary. Statev. Gordon, supra. If there are reasonable grounds to uphold the ordinance, the court will presume that the enacting body acted on those grounds, and the ordinance will be sustained unless its invalidity is established beyond a reasonable doubt. Blue SkyBar, supra; Lizotte v. Conservation Commission, 216 Conn. 320,336-37 (1990).
The defendant suggests that, because the original purpose of "flow control" can no longer be accomplished, then there can be no purpose for the remaining subsection other than harassment. The state, on the other hand, suggests, as mentioned in the affidavit of Frederick Thumm, the town's director of public works, that the town needs information about the amount of trash generated in order to come up with a comprehensive plan. It should be noted, in this context, that the opinion of Judge Dorsey specifically recognized that there were options available to the town, including paying its obligations to the Preston facility from tax revenues, collection and disposal of commercialwaste by the town or contracting with a single hauler to collectand dispose of the town's waste. Connecticut Carting Co., supra,8-9. It is not unreasonable to want reliable information in order to evaluate the options available to the town. Contrary to the defendant's assertion, there is no constitutional requirement that the legislative body choose the least restrictive possible CT Page 5555 way to achieve an objective; see Blue Sky Bar, supra, 29, n. 10; otherwise, the discretion vested in the legislative bodies would be significantly diminished.
The defendant ascribes an improper motive to the town, but there is no evidence of such a motive. This situation may be contrasted to that in Levine v. Police Commission, 28 Conn. App. 344
(1992), in which on-street parking regulations were enacted with the reasonably clear intent to curtail the operation of one particular business which was not very popular in the neighborhood. There, the regulation was found to be unreasonable as it was not related to a rational objective. Here, there is no persuasive evidence to show that the ordinance was enacted with an improper motive; as noted above, the court has the obligation to assume a valid motive in the absence of clear evidence to the contrary.
The defendant has not proved that the ordinance represents an invalid exercise of the police power.[2]
 III
Finally, the defendant claims that § 8(c) is not severable from subsections (a) and (b), which were found to constitute unconstitutional flow control. The defendant's position is that the operative parts of "flow control" were invalidated by Judge Dorsey's decision, and the remaining subsection (c) is but the vestigial remain of the once intact legislative scheme. As such, the defendant argues, the subsection has no legitimate objective in itself and is unenforceable. It is true that the subtitle of section 8 of the ordinance is entitled "Charges for Refuse Collection," and it is safe to assume that at least one of the original functions of § 8(c) was to facilitate the calculation of a hauler's fee. Calculation of the fee would presumably be determined in part by the total tonnage, as the amount of total revenue to be raised through the amount of solid waste was known because it was East Lyme's share of the cost of the Preston facility; the fee per ton would presumably be determined by dividing the amount needed to be raised by the total number of tons; the latter figure may have been estimated at first but over time would be known by weighing trash pursuant to § 8(c). Section 8 is, in turn, part of a lengthy ordinance addressing the overall issue of solid waste, and includes issues such as recycling, licensing of haulers, storage of waste, and so forth. The defendant has not shown that calculation of tonnage CT Page 5556 was never an objective of § 8(c), and it cannot be said that knowledge of tonnage is immaterial without flow control.[3]
If there is a legislative intent expressed as to whether separate sections of an act should rise or fall together, then that intent should prevail. Amsel v. Brooks, 141 Conn. 288,300-01 (1954). If parts of legislation are capable of standing alone when other sections are struck down, ordinarily the sections are deemed to be separable. Amsel v. Brooks, supra. The principle of severability has been said to be in aid of the intention of the lawmaker; the intention of the legislature, as a general supposition, ought not to be further frustrated simply because another section might be invalid. In re Robert H., 199 Conn. 693,704; Cross v. Wilson, 35 Conn. Sup. 628, 637 (1978). If, on the other hand, leaving one section intact would have an effect altogether different from that intended by the legislature, then the remaining section should be invalidated as well. In re RobertH., supra. If a court is to find sections not severable, the interdependence between the sections must be such that the legislative body would not have adopted the remainder of the section without the invalid part. State v. Menillo, 171 Conn. 141,145 (1976).
The application of the above principles does not lead inexorably to one conclusion or another. No expressed intent as to severability has been demonstrated. Section § 8(c) obviously is capable of clarity and execution standing by itself. Section 8(c) is not inconsistent with the remaining valid sections of the overall ordinance, and enforcement of that subsection does not result in an effect different from that intended. On the other hand, it is not at all clear that the legislative body would have enacted the subsection without subsections (a) and (b). The weighing of trash was obviously a part of the flow control plan; was it also part of the more general and comprehensive regulation of solid waste?
Applying the principles stated above, this court finds that invalidity has not been shown beyond a reasonable doubt, as there is a reasonable argument, supported by authority, for finding severability. Because "[e]very intendment is to be made in favor of the validity of [an] ordinance . . ."; Blue Sky Bar, supra,
23; and the ordinance is capable of standing alone and has a reasonable objective, the court does not find it so inextricably related to the forbidden sections that it, too, is unenforceable. CT Page 5557
 IV
For the reasons stated above, the motion to dismiss is denied.
BEACH, J.