[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I STATEMENT OF APPEAL
The plaintiffs, Laura and Paul Ruggiero, appeal the decision of the defendant, the town of Redding Zoning Commission (the commission), granting a "special permit/site plan amendment" to the defendant, New Pond Foundation, Inc. (NPF), pursuant to §§ 5.1.6 and 4.2.3(f) and (in) of the Redding Zoning Regulations (the regulations) for structural changes to one of its existing buildings. The Ruggieros appeal pursuant to General Statutes § 8-8.
 II BACKGROUND
The record reveals the following facts. In August of 2000, NPF applied to the commission for an amendment to an existing special use permit under §§ 5.1.6 and 4.2.3(f) and (in) of the regulations. (Return of Record (ROR), Item I-1.) Section 4.2.3(f) and (in) gives the commission authority to grant special permits for: "(f) Public libraries, museums, nature centers, art galleries, playhouses and similar institutions serving a community cultural need. . . . (m) Recreational camps, arboretums, and conservation training centers, in which the natural character of the land is substantially preserved, provided [the use is] located on a site of at least twenty-five (25) acres." Section 5.1.6 provides for amendments to special permits. The existing special permit NPF sought to amend was granted in 1993 and authorized NPF to construct a building that NPF describes as a bunkhouse. The 1993 special permit was granted under § 4.2.3(a) of the regulations.[1]
NPF describes itself as "a broad based environmental education center that provides people with opportunities to learn about and appreciate natural science, Native American heritage, farming traditions, astronomy and the arts." (ROR, Item 1-2, p. 1.) The purpose of the amended special permit is to renovate and add an addition to a bunkhouse on NPF's property in order to, among other things, improve its classroom facilities. (ROR, Item I-2.)
The property, a 102 acre farm, once was owned by Carmen Mathews, who also founded NPF. (ROR, Item V, pp. 15-17.) Upon her death, Mathews transferred her farm to NPF and the Redding Land Trust. NPF is a CT Page 12498 membership organization that supports many activities on the property including: tennis, cross-country skiing, festivals, an education center, and a summer camp. (ROR, Item V, pp. 15-17, 46-47.)
On September 28, 2000, the Redding Pilot published notice that the commission would hold a public hearing regarding NPF's amended special permit and attendant site plan to be held on October 11, 2000. (ROR, Item II-6.) The commission granted the special request at the October 11 hearing, and the decision was published in the Redding pilot on October 19, 2000. (Second Supplemental ROR, Item, filed, August 8, 2001.)
The Ruggieros now appeal the decision of the zoning commission.
 III JURISDICTION A Aggrievement
General Statutes § 8-8 governs an appeal from a decision of a zoning board to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Cardoza v. Zoning Commission, 211 Conn. 78, 82, 557 A.2d 545 (1989). "[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiffs appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). General Statutes § 8-8 (a)(1) provides, in pertinent part, that an aggrieved person "includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
In the present case, the Ruggieros alleged that they own property abutting the property of NPF (complaint ¶ 12) and proved as much at trial. (Transcript, May 29, 2001, pp. 3-7.) Accordingly, the Ruggieros are aggrieved pursuant to General Statutes § 8-8 (a)(1).
 B Timeliness of the Appeal and Service of Process
General Statutes § 8-8 (b) provides, in pertinent part, that an appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date CT Page 12499 that notice of the decision was published as required by the general statutes. Service of process "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality." General Statutes § 8-8 (e).
The decision of the commission was published in the Redding Pilot on October 19, 2000. (Second Supplemental ROR, Item, filed, August 8, 2001.) The sheriffs return indicates that service of process was made on the town clerk, the chairman of the commission, and NPF on November 3, 2000. The court finds that service of process was timely because it was made on the commission within fifteen days of publication of the commission's decision, and that it was served upon the proper parties.
 IV SCOPE OF REVIEW
"The terms special permit and special exception have the same legal import and can be used interchangeably." (Internal quotation marks omitted.) Connecticut Resources Recovery Authority v. Planning ZoningCommission, 46 Conn. App. 566, 569, 700 A.2d 67, cert. denied,243 Conn. 935, 702 A.2d 640 (1997). "A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values." (Citations omitted; internal quotation marks omitted.) Raczkowski v. Zoning Commission, 53 Conn. App. 636, 639-40,733 A.2d 862, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999). "[I]t is well settled that in granting a special permit, an applicant must satisf[y] all conditions imposed by the regulations. . . . The zoning commission has no discretion to deny the special exception if the regulations and the statutes are satisfied." (Internal quotation marks omitted.) Id., 640.
"When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity." (Internal quotation marks omitted.) Irwin v. Planning Zoning Commission, 244 Conn. 619,627, 711 A.2d 675 (1998). "Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied."Raczkowski v. Zoning Commission, supra, 53 Conn. App. 639.
"[A] court cannot take the view in every case that the discretion CT Page 12500 exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty." (Internal quotation marks omitted.) Quality Sand Gravel, Inc. v. Planning Zoning Commission,55 Conn. App. 533, 537, 738 A.2d 1157 (1999); see also Suffield HeightsCorp. v. Town Planning Commission, 144 Conn. 425, 428, 133 A.2d 612
(1957). "The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised. . . . The court's review is based on the record, which includes the knowledge of the board members gained through personal observation of the site. or through their personal knowledge of the area involved." (Internal quotation marks omitted.) Raczkowski v. ZoningCommission, supra, 53 Conn. App. 643. "Review of zoning commission decisions by the Superior Court is limited to a determination of whether the commission acted arbitrarily, illegally or unreasonably." (Internal quotation marks omitted.) Id., 639.
"The burden of proof to demonstrate that the [commission] acted improperly is upon the plaintiffs." (Internal quotation marks omitted.)Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206, 658 A.2d 559
(1995).
 V DISCUSSION
The subject of the NPF's August 2000 special permit was to renovate and expand a bunkhouse. (ROR, Item I-2.) Along with serving as a housing place for campers, the bunkhouse also contains classroom space and office space, among other things. (ROR, Item II-2.) NPF built the bunkhouse after receiving a special permit in 1993. (ROR, Item V, pp. 2-4.)
According to its letter of intent, which it filed with its application, NPF seeks to make the following changes to the bunkhouse: add a Native American classroom; relocate staff and office space to a more convenient location; add bunk space for camp counselors; add indoor recreation space for campers for inclement weather, evening activities and arts and crafts projects; expand kitchen space to comply with state regulations; and relocate its animal program. (ROR, Item I-2.)
In their complaint, the Ruggieros list the following two sets of grounds for this appeal. One: "In approving the special permit application, the Commission acted illegally, arbitrarily, and in abuse of the discretion vested in it by: a. failing to enforce the Regulations [regarding parking and traffic]; b. failing to enforce the Regulations, Section 5.1.6 of which provides that "[a]ny use governed by an existingCT Page 12501Special Permit may be amended by the Commission . . . c. failing to impose conditions limiting the growth of NPF, in light of its promises not to grow, its history of violating those promises, and its financial incentives to grow; and, d. failing to enforce the Regulations, Section 2.7 of which provides that, in addition to other stated purposes, the Regulations are intended to "[p]rotect the character and economic stability of the Town, by assuring that development is commensurate with available roads." (Emphasis in original.) (Complaint, ¶ 13.) Two: "In approving the Site Plan application, the Commission acted illegally, arbitrarily, and in abuse of the discretion vested in it by failing to enforce the Regulations: a. Section 5.1.4 of which [provides for a 100 foot setback]; b. Section 5.6.4 of which requires that parking facilities in a R-2 zone be located a minimum of thirty (30) feet from the front property line; and, c. Section 3.8(c) of which provides "[c]ommercial vehicles and construction equipment shall not be stored on any lot in aResidential Zone unless such storage is clearly incidental to a permitted use thereon and fully enclosed within a garage." (Emphasis in original.) (Complaint, ¶ 14.)
Because the Ruggieros do not specifically address each of these grounds in their brief, the court will not do so either. Lizotte v. ConservationCommission, 216 Conn. 320, 328, 579 A.2d 1044 (1990) ("this claim was neither briefed nor presented to the trial court and was, therefore, abandoned"); Collins v. Goldberg, 28 Conn. App. 733, 738, 611 A.2d 938
(1992) ("[b]ecause the plaintiff failed to brief the other claims set forth in the complaint, the trial court properly considered them abandoned."). Accordingly, the court will turn its attention to those arguments briefed by the Ruggieros.
Although the subject of this appeal and the amended special permit is NPF's plan to build an addition to its bunkhouse, the Ruggieros do not object to the addition itself. Instead, the Ruggieros seek reversal of the commission's granting of the amended special permit for three reasons unrelated to the addition. First, the Ruggieros argue that because the 1993 special permit for the original construction of the bunkhouse was invalid, it could not be amended. Second, the bus parking area violates the regulations. Finally, the Ruggieros argue that the commission abused its discretion by not attaching conditions to the amended special permit that would have corrected violations to the site plan. NPF and the commission respond that the 1993 permit is valid, that the only issue before the commission was whether the addition conformed to the regulations, and, therefore, any potential violations of the regulations on NPF's property were not properly before the commission. The proper procedure for remedying potential zoning violations on the property, according to the defendants, is to bring the alleged violations to the attention of the Redding zoning enforcement officer, not on the appeal of CT Page 12502 an amended special permit application. The court concludes that the 1993 special permit is irrelevant to this appeal, and that the commission abused its discretion by failing to consider the zoning violations revealed by NPF's site plan.
It is undisputed that NPF is not, and never was, a public or private school. Nevertheless, the 1993 special permit was granted pursuant to § 4.2.3(a) of the regulations, which authorizes special permits for public and private schools, not nature centers or camps. (ROR, Item V, pp. 3-4.) Now NPF seeks to amend the 1993 special permit in order to build an addition onto the bunkhouse. (ROR, Item I-2.) At the hearing before the commission, NPF's architect Sam Callaway raised this issue, and requested that the commission correct it by simply amending the language of the 1993 special permit to reflect approval under § 4.2.3(f) and (in). (ROR, Item V, pp. 3-4.) The commission agreed and amended the language of the 1993 special permit. (ROR, Item V, pp. 65-66.) It is the Ruggieros' contention, however, that because the 1993 special permit listed a use different from the use to which NPF ultimately put it, namely, running a school and not a camp, the 2000 application was essentially "a new Special Permit application seeking approval of an entirely different use than that allowed under the 1993 permit." (Emphasis in original.) (Plaintiffs' brief, p. 20.)
This argument is irrelevant for two reasons. One, the time to appeal the 1993 special permit expired long ago. General Statutes § 8-8. Two, where an amended special permit will have a greater than minimal impact on the intensity or nature of the special use, it is to be treated as a new special use permit. Redding Zoning Regs. § 5.1.6. Section 5.1.6 of the regulations provides as follows: "Any use governed by an existing Special Permit may be amended by the Commission through the granting of a new Special Permit, in accordance with the requirements of Sections 5.1.1 through 5.1.5 above. Where the Commission determines that a requested amendment to a Special Permit will be sufficiently minor that there will be no intensification or change in the nature of the use presently authorized, it may waive the requisite public hearing and grant any amendment not otherwise in conflict with these Regulations." Thus, if the commission finds that the proposed amended special permit has a sufficiently minor impact, the commission may grant the amended special permit without a hearing. Here the commission opted to hold a public hearing, therefore, it must have concluded that the impact was not minimal and required the commission to apply §§ 5.1.1 through 5.1.5. Therefore, it was incumbent on the commission to treat the amended special permit as it would a new special permit, and apply all the requisite procedures and standards. Accordingly, the validity of the 1993 special permit was irrelevant to the commission's consideration of the 2000 amended special permit, and any problems associated with the 1993 CT Page 12503 special permit will not serve to invalidate the commission's decision in this case.
The court will now turn to the issue of whether the commission applied the standards set forth in the regulations for the granting of an amended special permit correctly. NPF's amended special permit must comply with §§ 5.1.1 through 5.1.5 of the regulations, which govern the granting of a special permit. Redding Zoning Regs. § 5.1.6. Because the amendment violates § 5.1.4, this appeal must be sustained.
Section 5.1.1(b) of the regulations requires a special permit applicant to submit a site plan, and § 5.1.4 requires, in relevant part, that: "In addition to meeting all specified standards for the zone in which located . . . buildings, enclosed structures, Parking Facilities, and Satellite Parking Facilities serving nonresidential uses in R-4, R-2, and R-1 zones shall observe a minimum setback of one hundred (100) feet from the nearest lot line of any residential lot." (Emphasis omitted.)[2] NPF's site plan reveals that a parking area for two buses is located within the 100 foot setback. (ROR, Item IV-2.)
NPF and the commission argue that the parking area for the buses is irrelevant to the commission's action on this special permit amendment, because the only issue before the commission was whether the modifications to the bunkhouse complied with the regulations. The proper remedy, according to the defendants, is for the Ruggieros to bring their complaint to the zoning enforcement officer, not to appeal the commission's decision to amend NPF's special permit. This argument is unpersuasive. Section 5.1.6 of the regulations sets forth the procedure for the granting of an amendment to a special use permit. Where the commission finds that the proposed amendment has more than a than a minor intensification or change in the nature of the use, as the commission found in this application, § 5.1.6 required compliance with §§ 5.1.1 through 5.1.5 of the regulations. Section 5.1.1(b) requires the applicant to submit a site plan, and § 5.1.4 provides for a 100 foot buffer for nonresidential uses in R-1, R-2 and R-4 zones. The property in question is located in a R-2 zone, and the site plan reveals that the buses are parked within the 100 foot buffer. (ROR, Item IV-5.) Accordingly, the commission's review of the proposed amendment was not limited simply to the bunkhouse. The commission also had a duty to examine the site plan, and if the site plan revealed any zoning violations, the commission was obligated to deny the amended site plan. Redding Zoning Regs. §
5.1.6. Because the bus parking lot displayed on the site plan violated § 5.1.4, the commission improperly granted NPF's application. CT Page 12504
 VI CONCLUSION
The court finds that the bus parking area violates the regulations; accordingly, the appeal is hereby sustained. Because the court concludes that the commission abused its discretion by granting the amended special permit with the illegal bus parking area, the court declines to address the argument that the commission abused its authority by not granting a condition to the same effect.
Ginocchio, J.