[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal from a decision of the Guilford Inland Wetlands Commission hereinafter referred to as the "Commission", denying an application for a regulated activity in connection with a proposed subdivision in Guilford. The plaintiff's application was to alter a driveway in order to serve two additional lots in the "Norton Acres Subdivision". The proposed subdivision lots were sited on steeply sloped land adjacent to a watercourse that fed a public water supply. The proposed improvements would be to an access roadway on the plaintiff's property, thereby allowing two additional building lots to gain egress to an established town road.
The defendant Commissioner of Environmental Protection, hereinafter referred to as the "Commissioner" was not a party to the proceedings before the Commission, but was served with the administrative appeal in this matter pursuant to General Statutes § 22a-43 (a) and § 8-8. The Commissioner appears in many wetlands appeals throughout the state to address legal issues, both substantive and procedural, arising out of the application of the Inland Wetlands and Watercourses Act ("Wetlands Act"), General Statutes § 22a-36 to § 22a-45, by municipalities. General Statutes § 22a-43 governs an appeal from the decision of an inland wetlands and watercourses commission to the Superior Court. "It is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute." Munhall v. Inland Wetlands Commission,221 Conn. 46, 50, 602 A.2d 566 (1992).
The factual background indicates that the land that was the subject of the inland wetlands application consists of 11.92 acres located in North Guilford. This land is part of a larger parcel, "Norton Acres", that had already been partially developed. Norton Acres Section C. is the property of the subject application. The plaintiff originally proposed creating three residential building lots known as Lots 9, 10, and 11; widening the existing road, Walnut Tree Lane; and extending this road approximately CT Page 16597 800 feet to a proposed cul-de-sac that would serve the three building lots. During the public hearing, the plaintiff withdrew its proposal for Lot 11.
The 11.92 acre parcel is within the watershed of Lake Menunketuc, which is diverted to Lake Gaillard, a public drinking supply reservoir. A watercourse that drains into Lake Menunketuc intersected Lots 9, 10 and 11. Lake Menunketuc, itself is located approximately 1500 feet south of the larger Norton Acres parcel. The proposed development activity on the lots and cul-de-sac was up gradient from watercourse. The slopes on the sites are steep and drain directly into the watercourse.
 I
Before turning to the issues on appeal, the court must address the question of aggrievement. East Side Civic Assn. v. Planning and ZoningCommissioner, 161 Conn. 558, 559, 290 A.2d 348 (1971); Park City Hospitalv. Commission on Hospitals and Health Care, 14 Conn. App. 413, 417,542 A.2d 326 (1988), aff'd, 210 Conn. 697, 556 A.2d 602 (1989). "Pleading and proof that the plaintiffs are aggrieved within the meaning of the statute is a prerequisite to the trial court's jurisdiction over the subject matter of the appeal." Munhall v. Inland Wetlands Commission, supra, 221 Conn. 50. "Aggrievement is a question of fact for the trial court and the plaintiff has the burden of proving that fact." WaterPollution Control Authority v. Keeney, 234 Conn. 488, 493, 662 A.2d 124
(1995). Under General Statutes § 22a-43, a person aggrieved by an order of the commission may appeal from that order. As noted by our Supreme Court in Med-Trans of Conn, Inc. v. Dept. of Public Health Addiction Services, 242 Conn. 152, 158-59, 699 A.2d 142
(1997), the test for determining aggrievement is twofold: First, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision.
In Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525,530, 525 A.2d 1186 (1987), the Supreme Court held that an owner of the subject property met the two requirements to find aggrievement. Section22a-43 (a) provides in relevant part: "[A]ny person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any . . . decision or action . . . [may] appeal to the superior court. CT Page 16598
This court heard testimony on August 20, 2002 from Frederick Dandio that he was appointed Executor of the Estate of Jessie DiAntico by the Probate Court. A certified copy of Dandio's appointment as the executor and of the Last Will and Testament of Jessie DiAntico were received into evidence and marked as exhibits. Dandio testified that the Estate is the owner of the subject real property at issue and that the probating of the estate has not yet been completed. The Last Will and Testament provides for certain specific monetary bequests to Dandio's children and further provides that in the event that the estate has adequate funds to satisfy these specific monetary bequests, that the rest, residue and remainder of the estate, both real and personal property, was bequeathed to Dandio.
The defendant Commission questions the standing of the estate to file the subject application, arguing that it is well settled that title to real estate vests in the heirs at the time of the death of the owner, and that the executor does not take title to the real estate. Pollard v.Zoning Board of Appeals, 186 Conn. 32, 41-42, 438 A.2d 1186 (1982). The Commission raises this issue in its appeal brief dated April 30, 2002.
Legal counsel for the Commission stipulated at the hearing on August 20, 2002, that if the estate was the owner of the land, the estate was in fact an aggrieved party. The Commission offered no testimony or argument at the aggrievement hearing to challenge the status of the estate as an aggrieved party. The court finds that the plaintiff, as the executor of the estate and as a named heir in the Last Will and Testament satisfies the requirement of ownership of the subject land and is aggrieved by the order of the commission denying his application.
 II
The court next addresses the timeliness of the plaintiff's appeal. General Statutes § 22a-43 (a) provides, in pertinent part. that an appeal may be commenced "within the time specified in subsection (b) of section 8-8 from the publication of such regulation, order, decision or action. . . ." General Statutes § 8-8 (b) provides, in part. that an "appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published. . . ." Section 22a-43 (a) provides that "[n]otice of such appeal shall be served upon the inland wetlands agency and the commissioner [of environmental protection]."
Notice of the commission's decision denying the application on September 13, 2001, was published in a local newspaper having general circulation in the community on September 20, 2001. The plaintiff's appeal was commenced by service of process upon the Guilford Town Clerk CT Page 16599 and the chairman of the Commission on September 20, 2001, and service was made upon the Commissioner of the Department of Environmental Protection on September 21, 2001. The appeal, bearing a return date of October 30, 2001, was filed in court on September 24, 2001. Thereafter, the defendants appeared and filed their respective answers and the return of the record. The estate filed its appeal brief on February 22, 2002 and the Commissioner and the Commission filed their briefs on April 12, 2002 and April 30, 2002, respectively. Accordingly, the court finds that the plaintiff filed a timely appeal upon the proper parties.
 III
The court next addresses the relevant standard of review governing the Commission's decision denying the plaintiff's application, as it is well established that the court has a limited scope of review of decisions from inland wetlands agencies. "The purpose of the Inland Wetlands and Watercourses Act (act) is to provide an orderly process in which the rights of landowners to use or develop their land can be balanced with the need to protect the invaluable public resource of wetlands . . . The statute, and the regulations adopted to implement it, provide for an application and hearing process through which these competing interests are balanced. . . ." (Citations omitted.) Woodburn v. ConservationCommission, 37 Conn. App. 166, 170, 655 A.2d 764, cert. denied,233 Conn. 906, 657 A.2d 645 (1995).
In an appeal from the decision of an inland wetland commission, the appealing party bears the burden of proving that the commission acted improperly. Newtown v. Keeney, 234 Conn. 312, 319, 661 A.2d 589 (1995);Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587-88, 628 A.2d 1286
(1993). "The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." (Internal quotation marks omitted.) Newtown v. Keeney, supra,234 Conn. 319; Samperi v. Inland Wetlands Agency, supra, 226 Conn. 587;Feinson v. Conservation Commission, 180 Conn. 421, 425, 429 A.2d 910
(1980); Colandro v. Zoning Commission, 176 Conn. 439, 440. 408 A.2d 229
(1979). "In reviewing [a] decision made pursuant to the act, the reviewing court must sustain the [commission's] determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the CT Page 16600 sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Internal quotation marks omitted.) Newtown v. Keeney, supra, 234 Conn. 319-20. An agency's decision must be sustained by a reviewing court unless the agency's action is "arbitrary, illegal or not reasonably supported by the evidence." Red Hill Coalition, Inc. v.Conservation Commission, 212 Conn. 710, 718, 563 A.2d 1339 (1989). An agency's decision must be upheld if an examination of the record discloses evidence that supports any one off the reasons given. Samperiv. Inland Wetlands Agency, supra, 226 Conn. 587-588: Huck v. InlandWetlands and Watercourses Agency, supra, 203 Conn. 539-40. The Commission was not required to use the evidence and materials presented to it in any particular fashion, as long as, the conduct of the hearing is fundamentally fair. Bradley v. Inland Wetlands Agency, 28 Conn. App. 48,54 (1992); see also, Grimes v. Conservation Commission, 243 Conn. 266,273-74, 703 A.2d 101 (1997).
In applying the substantial evidence standard, it is improper for the reviewing court to reverse an agency decision simply because an agency failed to state its reason for its decision on the record. Samperi v.Inland Wetlands Agency, supra. 226 Conn. at 588. The reviewing court "must search the record of the hearings before the commission to determine if there is an adequate basis for its decision." Gagnon v.Inland Wetlands Watercourses Commission, 213 Conn. 604, 611,569 A.2d 1094 (1990).
In matters of technical complexity, a lay commission without expertise in the area may not substitute its own judgment for contrary expert testimony. Feinson v. Conservation Commission, supra, 180 Conn. 421. To do so without making public the basis of its decision and without offering the applicant an opportunity for rebuttal is to act arbitrarily CT Page 16601 and without fundamental fairness. Id. at 428-29. The agency cannot disregard the only expert evidence on the issue where agency members lack their own expertise and knowledge; Tanner v. Conservation Commission,15 Conn. App. 336, 341, 544 A.2d 258 (1988); but non-experts may offer reliable and substantial evidence. Kaeser v. Conservation Commission,20 Conn. App. 309, 315-16, 567 A.2d 383 (1989). In evaluating whether the conclusions reached meet the substantial evidence standards, the credibility of witnesses is a matter within the province of the administrative agency. Huck v. Inland Wetlands WatercoursesAgency, supra, 203 Conn. at 540-41. Thus the Commission is afforded deference, as long as, there is substantial evidence in the record to support its decision.
 IV
A copy of the Commission's decision following the hearing on September 12, 2001, was sent by certified mail to the plaintiff. In its letter to the plaintiff, dated September 17, 2001, the Commission set forth five reasons for its denial of the plaintiff's application. The Commission stated "This application is denied based upon the findings that Lot 10 and the cul-de-sac are on sloping areas. The septic system on Lot 10 has an 11 to 1, 1 in 9 slope immediately adjacent to the 100' setback line; the slopes below that, closer to the watercourse are even steeper. Controlling erosion will be very difficult on these steep slopes. The proposed work to be done on the cul-de-sac and on Lot 10 presents a difficult proposition and as seen before, cutting down of the road itself will provide even more opportunities for erosion into the watercourse." The Commission's decision lists five reasons for its denial of the plaintiff's proposal to conduct regulated activities on the property. Any one of these reasons may suffice, as long as, there is substantial evidence in the record to support it. Huck v. Inland Wetlands Watercourses Agency, supra, 203 Conn. at 540. The plaintiff argues that the record of the public hearing on September 12, 2001 contains no evidence of significant activity, as defined in the Guilford Inland and Watercourse Regulation § 271-6 on the adjoining wetlands; and there is nothing in that record to support any of the Commission's stated reasons for denial of the permit. The court disagrees.
The record of the decision in this case does not document a commission "relying on its own knowledge and experience, act[ing] in a manner which placed its data base beyond the [plaintiffs] scrutiny." Huck v. InlandWetlands Watercourses Agency, supra, 203 Conn. 525 (1987) contains much discussion regarding the municipal inland wetlands commission's concerns about steep gradients and soil erosion. The present case record contains materials that speak to the difficulty of developing the subject CT Page 16602 site, in particular, technical remarks from the water company, whose public water supply lands were down gradient from the proposed construction and also, from the town's own Office of the Environmental Planner. See, e.g., Rec. at R-003: R-006 (topographic amp); R-007; R-010 and R-011; and R-021. On July 11, 2001, the town's Environmental Planner, recommended that a dedicated conservation easement be placed on the 100 foot upland review area adjacent to the wetland and watercourse to ensure that the landscape in this area be maintained in its natural state. R-014. The Environmental Analyst for the Regional Water Authority. made a similar recommendation in a letter dated June 13, 2001. The plaintiff's own engineer, offered to create a conservation easement. However, no easement was set forth in any plans or drawings submitted to the Commission, despite the fact that the public hearing remained open for two months after the Environmental Planner made her initial recommendations. Rather than a 100 foot conservation easement, the final drawings from the plaintiff showed a "Deed Restricted Area" that extended approximately 60 feet from the wetlands from Lot 10 and stops abruptly at the boundary of Lot 10. The Commission, given the recommendations from the Environmental Planner and the Regional Water Authority, could properly find that the proposed buffer, submitted by the plaintiff, was inadequate to protect the watercourse.
A review of the minutes of the Commission's meeting, reveals that the Commission Chairman commented before voting occurred, that the proposed buffer was inadequate. The need for an extensive buffer was mandated by the steep slopes on the lot and the erodible nature of the soils, and was noted by the Commission's Environmental Planner in a letter to the Commission, dated July 11, 2001. This potential for erosion was also noted by the analyst for the Regional Water Authority. The water source in question. Lake Menunketuc, had suffered degradation in water quality because of soil erosion and sedimentation emanating from Walnut Tree Lane. and the Commission could consider this when determining if an adequate buffer existed for the proposed development of the additional lots. A primary purpose for the regulation of wetlands and watercourses is to ensure that water quality for public drinking water is maintained. General Statutes § 22a-36 and § 22a-42f. The opinions of the Environmental Planner and the Analyst for the Regional Water Authority are expert testimony upon which the Commission could rely in reaching its decision.
The plaintiff also argues that because the alteration of the road and the developments of Lots 9 and 10 were outside the 100 foot upland review area, the activities may be outside the Commission's jurisdiction. Our Supreme Court in Queach Corp. v. Inland Wetlands Commission of the Townof Branford, 258 Conn. 178, 197-99, 799 A.2d 134 (2001), held that a CT Page 16603 local commission may regulate activities outside wetlands and watercourses if these activities are likely to impact or to affect wetlands and watercourses. See also, Mario v. Fairfield, 217 Conn. 164,167-72, 585 A.2d 87 (1991); Lizotte v. Conservation Commission,216 Conn. 320, 579 A.2d 1044 (1990); Cioffoletti v. Planning ZoningCommission, 209 Conn. 544, 558, 552 A.2d 796 (1989), overruled on other grounds, 245 Conn. 551, 582. 715 A.2d 46 (1998). The Commission's Regulations § 271-38 require it to consider the impacts on wetlands and watercourses from activities occurring outside wetlands areas.
Regarding the plaintiff's argument that the Commission unnecessarily concerned itself with a discussion of sound forestry practices, a non-wetlands issue, the record indicates that it was the plaintiff who raised this issue in a note on its plans. The Commission's Environmental Planner addressed this issue in her letter of July 11, 2001, by recommending the aforementioned 100 foot conservation easement in order to maintain the site in a natural state. Subsequent revised plans by the plaintiff continued to allow the cutting of live trees, "in accordance with sound forestry practices". The discussion of leaving the land in a natural state was within the Commission's purview to protect wetlands and watercourses.
Lastly, the plaintiff makes a claim that the effect of the Commission's denial is to preclude any further development of the property. The state has the power to regulate the uses to which an owner may devote his property. Figarsky v. Historic District Commission of Norwich,171 Conn. 198, 206, 368 A.2d 163 (1976). The owner is not entitled to compensation for the diminution in value of his property resulting from restrictions placed upon its use by a valid exercise of police power.Goldblatt v. Hempstead, 369 U.S. 590, 593, 82 S.Ct. 987, 8 L.Ed.2d 130;Mugler v. Kansas, 123 U.S. 623, 669-69, 8 S.Ct. 273, 31 L.Ed 205; DeMellov. Plainville, 170 Conn. 675, 679, 368 A.2d 71 (1976). Protection of natural resources is a proper area for regulation under the police power. Brecciaroli v. Commissioner of Environmental Protection,168 Conn. 349, 357, 362 A.2d (1975). Therefore, unless the plaintiff can prove that the Commission will not approve any use of the property, the plaintiff's takings claim is not ripe for review in this appeal. "The plaintiff [appellant in a wetlands appeal] is not entitled to judicial review of the merits of his regulatory takings claim until he has met the requirement of establishing the finality of the agency determination."Gil v. Inland Wetlands Watercourses Agency, 219 Conn. 404, 406,593 A.2d 1368 (1991). The plaintiff therefore bears the burden of proving that the Commission will not allow any reasonable alternative use of his property. Huck v. Inland Wetlands Watercourses Agency, supra,203 Conn. 525, 553. CT Page 16604
The court agrees with the defendants that the plaintiff makes no claim that a revised application would be futile or that the record in this action manifestly demonstrates that no other proposal for the development of these lots is possible except for the present plan which was denied by the Commission. The plaintiff cannot prevail on the finality issue.
Accordingly, for the reasons set forth herein the appeal is hereby dismissed.
The Court
by ___________________ Arnold, J. CT Page 16605